Merrimack, } 
June, 1898. }

## STATE v. JACKMAN.

A municipal ordinance requiring the tenant or occupant, or, if there be no tenant, the owner of any building or land bordering on any street where there is a sidewalk, to remove the snow from such sidewalk, not being in conformity with the constitutional right of equality of privilege and of burden, is inoperative and void.

APPEAL, from the decision of the police court of the city of Concord, imposing a fine of five dollars and costs upon the defendant for the violation of an ordinance of the city duly and legally adopted.

The ordinance was as follows: " The tenant or occupant, or, if there be no tenant, the owner of any building or lot of land bordering on any street where there is a sidewalk, shall cause all snow to be removed from the sidewalk adjoining his aforesaid premises within six hours after the snow shall have ceased to fall, if in the daytime, or before two of the clock in the afternoon next succeeding, if the snow shall have ceased to fall in the night-time."

The defendant admits that he has not complied with the ordinance, and his only defence is that the ordinance is invalid. The charter and ordinances of the city may be referred to.

*Sargent, Hollis & Niles*, for the state. The only question in the case is whether or not the ordinance, under which the defendant was sentenced, is valid. The case finds that the ordinance was duly and legally adopted. It is not contended that the ordinance is not a valid exercise of the power vested in the city councils by its charter and the laws of the state, or that the sentence imposed was not within the limit authorized by law.

So far as we are aware, there is no authority directly in point in this state, upon the question of the validity of this or any similar ordinance. The question involved, it will be conceded, is an important one. For many years the ordinance in question has been in force and generally complied with. In a few instances, citizens have refused to obey it and denied its validity. It is obvious that if some to whom it applies — no matter how few — refuse or neglect to comply with it, an injustice results to those who do observe its terms, relying upon its supposed validity. For this reason, the local authorities have conceived it to be their duty to institute this prosecution for the purpose of having its validity passed upon by the court, and having the question settled for all time.

The precise question raised in this case was considered by the supreme court of Massachusetts, in the case of *Goddard, Petitioner*, 16 Pick. 504, where an ordinance of the city of Boston, almost identical with the one in this case, was held valid. The opinion was delivered by *Shaw*, C. J. It should be observed that the objections to the validity of the ordinance which are urged by counsel for the defendant in this case, were raised and considered by the Massachusetts court in the opinion rendered. We quote from the opinion (*pp.* 508–511):

"Another, and perhaps the most important, objection is that the by-law is one imposing a tax or duty upon the citizens, and it is a violation of the constitution in this, that it is partial and unequal, and contravenes that fundamental maxim of our social system that all burdens and taxes laid on the people for the public good shall be equal.

"But the court are all of opinion that the by-law in question is not obnoxious to this objection.

"It is not speaking strictly to characterize this city ordinance as a law levying a tax, the direct or principal object of which is the raising of revenue. It imposes a duty upon a large class of persons, the performance of which requires some labor and expense, and therefore indirectly operates as a law creating a burden. But we think it is rather to be regarded as a police regulation, requiring a duty to be performed, highly salutary and advantageous to the citizens of a populous and closely built city, and which is imposed upon them because they are so situated as that they can most promptly and conveniently perform it, and it is laid, not upon a few, but upon a numerous class, all those who are so situated, and equally upon all who are within the description composing the class.

"It is said to be unequal, because it singles out a particular class of citizens, to wit, the owners and occupiers of real estate, and imposes the duty exclusively upon them.

"If this were an arbitrary selection of a class of citizens, without reference to their peculiar fitness and ability to perform the duty, the objection would have great weight, as, for instance, if the expense of clearing the streets of snow were imposed upon the mechanics, or merchants, or any other distinct class of citizens, between whose convenience and accommodation and the labor to be done there is no material relation. But suppose there is a class of citizens who will themselves commonly derive a benefit from the performance of some public duty, we can see no inequality in requiring that all those who will derive such benefit shall, by a general and equal law, be required to do it. Supposing a by-law should require every inhabitant who keeps a cart, truck, or other team, or a coach or other carriage, to turn out himself or send a man, with one or more horses, after each

heavy fall of snow, to assist in leveling it. Although other citizens would derive a benefit, yet as these derive some peculiar benefit, accompanied with the ability, I can at present perceive no valid objection to a by-law requiring it, on the ground of inequality. Supposing a general regulation that, at certain seasons of the year, every shopkeeper should sprinkle the sidewalk in front of his own shop, or sweep it, inasmuch as he has a peculiar benefit, and as the duty is equal upon all who came within the description, it seems to us to be equal, in the sense which the law requires all such burdens to be equal. And it appears to us that the case before us is similar. Although the sidewalk is part of the public street, and the public have an easement in it, yet the adjacent occupant often is the owner of the fee and generally has some peculiar interest in it and benefit from it, distinct from that which he enjoys in common with the rest of the community. He has this interest and benefit, often in accommodating his cellar door and steps, a passage for fuel, and the passage to and from his own house to the street. To some purposes, therefore, it is denominated his sidewalk. For his own accommodation he would have an interest in clearing the snow from his own door. The owners and occupiers of house lots and other real estate, therefore, have an interest in the performance of this duty peculiar and somewhat distinct from that of the rest of the community.

"Besides, from their situation, they have the power and ability to perform this duty with the promptness which the benefit of the community requires, and the duty is divided, distributed, and apportioned upon so large a number that it can be done promptly and effectually, and without imposing a very severe burden upon any one. Supposing a by-law should require, what is often done in practice, that upon an alarm of fire in the night, all householders, on streets leading to and near the fire, should exhibit a light. This would seem to be reasonable. Or that all the owners or occupiers of dwelling-houses, having a well and pump, should keep them in repair at their own expense, to be used in case of fire. It would operate partially, but it seems to us not unequal, in the sense in which we are using that term. The city might keep persons ready in every street to light torches and flambeaux in case of fire, and the expense be paid from the treasury; still it appears to me that as householders would derive a benefit from the operation of this general regulation, as their local situation puts it peculiarly within their power and ability to perform it without great expense, and as it is equal in its terms, it would not be obnoxious to the charge of being invalid for partiality and inequality.

"In all these cases the answer to the objection of partiality and inequality is that the duty required is a duty upon a person in

respect to the property which he holds, occupies, and enjoys, under the protection and benefit of the laws, that it operates upon each and all in their turns, as they become owners or occupiers of such estates, and it ceases to be required of them when they cease to be thus holders and occupiers of the estate, in respect to which the duty is required. In this respect it is like a land tax, or house tax, it does not bear upon owners of personal property, and therefore does not bear upon all citizens alike, but is not on that account unequal or partial, in the sense contemplated by the declaration of rights, requiring all taxes and burdens to be equal and impartial.

" The court are all of opinion that, as a by-law, the regulation in question was a reasonable one, that it was not repugnant to the constitution or laws of the commonwealth, and that the conviction was right."

In *Morse* v. *Stocker*, 1 Allen 150, 158, 159, the court say: " There may undoubtedly be taxes levied for public purposes of a local character which will not be adjudged unconstitutional on account of inequality in their operation. Where the assessment is made upon persons in respect of their ownership of a particular species of property, which receives a peculiar benefit from the expenditure of the tax, the tax is valid, although it does not operate upon all persons and property in the community."

*Goddard, Petitioner*, has also been cited with approval in the following cases: *Boston* v. *Shaw*, 1 Met. 130; *Lowell* v. *Hadley*, 8 Met. 180; *Pedrick* v. *Bailey*, 12 Gray 161; *Kirby* v. *Association*, 14 Gray 249; *Morse* v. *Stocker*, 1 Allen 150; *Dorgan* v. *Boston*, 12 Allen 223; *Commonwealth* v. *Patch*, 97 Mass. 221; *Lowell* v. *Boston*, 111 Mass. 454; *Howe* v. *Cambridge*, 114 Mass. 388; *Holt* v. *Somerville*, 127 Mass. 408; *Commonwealth* v. *Cutter*, 156 Mass. 52; *Clinton* v. *Welch*, 166 Mass. 133; *Mayor* v. *Maberry*, 6 Humph. 368.

The doctrine of *Goddard, Petitioner*, has also been approved by Dillon in his work on municipal corporations in the following language: " Under a general power to make needful and salutary by-laws, a city ordinance of Boston, requiring the tenant or occupant, or, in case there shall be no tenant, the owners of buildings bordering on certain streets, to clear the snow from the sidewalks adjoining their respective buildings, is reasonable and valid. It was objected against this ordinance that it violated the fundamental maxim that all burdens and taxes laid upon the people for the public good shall be equal. The objection was overruled. And it was justly regarded by the court as in the nature of a police regulation, requiring a duty to be performed highly salutary and advantageous to the citizens of a populous and closely built city, and imposed upon the persons named because they are so situated that they can promptly and conveniently

perform it; and it is laid not upon a few, but upon a numerous class, and equally upon all who are within the description composing the class, and who commonly derive a peculiar benefit from the duty required. It would doubtless be otherwise if the ordinance arbitrarily imposed this duty upon the mechanics or merchants, or any other class of citizens between whose convenience and the labor required there is no natural relation." 1 Dill. Mun. Cor. (4th ed.), s. 394.

In *Clinton* v. *Welch*, 166 Mass. 133, the Massachusetts court sustained a by-law of a town imposing the duty upon the owners and occupants of estates abutting upon certain kinds' of sidewalks only, to remove snow and ice therefrom. The opinion of the court in that case clearly and concisely states the answer to the objections against such an ordinance which are urged by defendant's counsel in the case at bar.

The city of Boston passed an ordinance forbidding an abutter to allow filth to remain on that part of the passageway adjoining his land. In a prosecution under this ordinance the court say: " The fact that in order to keep them free from filth, such owners and occupants may be obliged to remove matter which they had no agency in depositing there, or to do what they would not be obliged to do if they did not own or occupy land abutting on the private passageway, and have the right to use it, does not render the ordinance unreasonable, or impose upon the owner or occupant duties which they lawfully cannot be required to perform. . . . It is analogous to an ordinance requiring owners or occupants to clear the snow from sidewalks adjoining their respective houses or lands." *Commonwealth* v. *Cutter*, 156 Mass. 52, 55.

Ordinances analogous in principle to the one in question have been sustained in the following cases: *Dorgan* v. *Boston*, 12 Allen 223; *Howe* v. *Cambridge*, 114 Mass. 388; *Holt* v. *Somerville*, 127 Mass. 408; *Paxson* v. *Sweet*, 13 N. J. Law 196; *Bonsall* v. *Lebanon*, 19 Ohio 418.

In Michigan an ordinance requiring all persons to keep their sidewalks free from snow and ice was held to impose a purely public duty, and that persons injured by slipping on the ice could not bring private actions against the owners of the premises, but that the actions must be brought against the city. *Cooley*, J., in the opinion rendered does not question the validity of the ordinance, and works out the result reached by the court upon the assumption that it is valid. *Taylor* v. *Railroad*, 45 Mich. 74.

In Tennessee the court hold that an ordinance similar to the one in the case at bar is a constitutional and valid ordinance, and regard it in the nature of a power to remove nuisances. *Mayor* v. *Maberry*, 6 Humph. 368. .

In Illinois a contrary view has been taken, and an ordinance similar to the one at bar has been held invalid, in the case of

*Gridley* v. *Bloomington*, 88 Ill. 554. This decision was afterward followed in *Chicago* v. *O'Brien*, 111 Ill. 532. It should be observed that in this latter case three of the judges of that court dissented, including *Sheldon*, the former chief justice.

We fail to find in *State* v. *Express Co.*, 60 N. H. 219, *Curry* v. *Spencer*, 61 N. H. 624, *B., C. & M. Railroad* v. *State*, 60 N. H. 87, and various other New Hampshire cases not cited by counsel, anything in opposition to the doctrine laid down in the Massachusetts and other cases cited as upholding the validity of the ordinance. The decision of Chief Justice *Shaw*, in *Goddard, Petitioner*, and the other cases which follow that decision, are based upon the idea that the ordinance in question is not to be regarded as an exercise of the taxing power, but rather as an exercise of the police power over the state. Whether such an ordinance is to be regarded as an exercise of the police power of the state or is in the nature of a power to remove nuisances, as suggested in *Mayor* v. *Maberry*, *supra*, and in one or two of the Massachusetts cases which we have cited, is not material. If either view be adopted, it is not invalidated or affected by the authorities relating to the exercise of the taxing power. The difference between the constitution of Massachusetts and the constitution of New Hampshire is of words more than of substance, and this was conceded by counsel for the defendant in the oral argument. There would seem to be no substantial reason why this court should hold differently on this question from the Massachusetts court.

For many years there was a law in this state which provided that in constructing sidewalks the board of mayor and aldermen might assess upon the owners of the property abutting on such street not exceeding one half of the expense of constructing the same, and that an assessment made for such purpose should be valid and binding and a lien upon the owners of such land. G. L., c. 78, s. 3. So far as we are aware, it never was suggested that this act was not constitutional and valid. If a statute which provides that no person shall be liable for killing any dog which shall be found not having around his neck a collar of brass, tin, or leather, with the name of the owner or owners carved or engraved thereon, is not in conflict with the constitution of New Hampshire (*Morey* v. *Brown*, 42 N. H. 373; *Orne* v. *Roberts*, 51 N. H. 110), but is valid as a " mere police regulation such as . . . the legislature might constitutionally establish," we are at a loss to know why the ordinance in this case is not a valid exercise of the police power. A statute or an ordinance requiring the owner of a dog to go to labor or expense in procuring and putting on a collar for the protection of people generally is just as much an exercise of the taxing power as a statute or an ordinance which requires the owner of land to remove

snow from the sidewalk in front of his premises for the benefit of himself and the traveling public.

It requires no argument to demonstrate that it is of the greatest importance both for the comfort and convenience of the traveling public and the abutting landowners that the snow and ice should be removed from the sidewalks of a populous city. In the spring of the year, when the rains fall and the snow is melting, it is of the greatest inconvenience and sometimes almost impossible to go over a sidewalk from which the snow has not been removed, without danger of injury to health and limbs. No appliance which has yet been devised, or that has yet come into use, serves to clear the sidewalks from snow and ice except the ordinary shovel in the hands of a man. It must be clear that it would be impossible for the local authorities to cause the sidewalks to be shoveled off expeditiously and between snowstorms, both on account of the impossibility of getting a large number of men immediately and the great expense involved. If " the practical difficulty of charging the owner with knowledge of the mischievous character of the dog and therefore assuming that such animals were naturally dangerous and withal of little utility " (*Orne* v. *Roberts, supra*), is sufficient to justify the legislature in passing a law to deprive the owner of the dog of a portion of his property, without compensation, for the benefit of the public, and such a law is constitutional and valid, why may not the necessities and exigencies of the situation in regard to traveling upon sidewalks in the winter season and providing the landowner with convenient access to his premises, be sufficient to sustain the validity of an ordinance compelling such owner to remove snow and ice, as a police regulation such as the legislature and the city, by its ordinance, may constitutionally establish ?

*Samuel C. Eastman,* for the defendant. It is obvious that the intention of the city council in the passage of the ordinance requiring certain abutters, but not all, to remove the snow from that portion of the street adjoining their land, was to secure the more convenient use of the street. The ordering of the removal of an obstruction placed by nature upon the highway created an arbitrary and unequal burden placed upon certain individuals for the benefit of the whole community. The municipality, upon which by statute the construction and repair of the streets is placed, sought to shift the burden of the care of a portion of the street to the shoulders of certain members of the community. The ordinance does not attempt to forbid the abutter from doing an act which would be prejudicial to the common good, nor require him to do something which will atone for some act of his which has been detrimental to the public good. It is not,

therefore, an instance where that vague, expansive, but convenient and necessary doctrine called police power can be called in to aid in its jurisdiction.   State v. Express Co., 60 N. H. 219, 233–234.

If the real object of the ordinance is, as just claimed, to relieve the city of the expense of caring for the highways and place the burden upon individuals, it is none the less a tax because it demands the duty in labor and not in money.   It is not long since all highway taxes were payable in labor, and money was collected only as a compensation for the neglect or inability to furnish the labor.   That this is the real object of the ordinance is shown by argument made in support of it, that the expense of removing the snow by the city would be so great that the city could not assume the burden, and that each individual can easily take care of that portion of the sidewalk abutting his land at a small expense.   "If the governmental expense of a state prison, county almshouse, town highway, a district school, or other common benefit, is $1,000, that expense is a tax to be paid by those who, in contemplation of law, enjoy or have a right to enjoy the benefit, and who are the joint purchasers of it through governmental agency."   State v. Express Co., supra, 251.

The burden imposed by this ordinance is not only not divided among all within the district affected by it, for it is imposed only on the owners or occupants of land abutting on sidewalks, and it is not even proportionably distributed among them.   The owner of land worth $500 a front foot pays no more per lineal foot of sidewalk than does the owner of land worth only $50 per front foot.   There is even a gross inequality between the owners of corner lots and the owners of lots of equal size with only one front on the street.   Length of street line — not value — is taken as the standard.

This is not a law for the protection of the community against an immoral or injurious trade, like the sale of spirits, the keeping of billiard tables or bowling alleys.   It is not a regulation of trade to protect the guileless, like laws regulating the weight of a loaf of bread, or the size of a milk quart.   In fact, it comes within no established principle calling for the exercise of the police power.   It is a pure and simple burden laid upon the owner or occupant of land for the benefit of the community.   If such owner or occupant can be compelled to keep the sidewalk free from snow in winter, why should he not also be obliged to sprinkle the driveway in summer when the heat of the sun, the same force of nature as that which produces the snow, dries up the moisture and converts the soil into penetrating and smothering dust ?

It is true that in other states such regulations have been sus-

tained. The leading case, to which all the others refer for this authority, is *Goddard, Petitioner*, 16 Pick. 504, where the opinion is given by Chief Justice *Shaw*. As it is the leading case, it is worth while to examine the reasoning by which the conclusion is reached. In spite of the great authority of Chief Justice *Shaw*, we are not bound to follow it, if it is in conflict with the constitution of New Hampshire. Massachusetts taxes incomes and also legacies and successions, which taxes are held to be unconstitutional in New Hampshire. " Any law or practice of Massachusetts, or any other jurisdiction, American or foreign, in which the rule of equal rights does not prevail, or taxation is an exception to that rule, is not an authority on which an unequal division of public expense can be made in this state." *State* v. *Express Co.*, *supra*, 250.

The opinion calls the ordinance a police regulation because it requires a duty to be performed, highly salutary and advantageous to the citizens of a populous and closely built city, and which is imposed upon them because they are so situated as that they can most conveniently perform it, and it is laid on a numerous class and equally upon all who are within the description of the class. He admits that if the class were selected on account of their trade or profession, the objection that it did single out a class would have great weight. But as it takes a class of owners of a particular kind of property, who derive a special benefit from the work done, it justifies the selection and the imposition of the burden, for he admits that it " requires some labor and expense and therefore indirectly operates as a law creating a burden."

The benefit to the community is no reason for calling a burden imposed a police regulation. There is no work of the government that is not a benefit to the community. The whole policing of the city, the lighting of the streets, the keeping the streets fit for travel, are all for the benefit of the community and might with equal justice be placed upon the abutters and called a police regulation. The administration of justice, the care of parks and commons, the support of paupers, are all for the benefit of the community. Some other test than this must be found to justify so wide a departure from the constitutional rule that the bearing of public burdens must be proportional. Nor can it be truly said that owners of real estate are specially benefited by the removal of snow from sidewalks. It is a begging of the question to say that they use them more than other people, or that they own the fee. If they do own the fee, it is because the state has never paid for it, but has paid for the use, and the abutter has to bear the burden of that use. He has no special privileges in that use, and therefore should have no burdens in relation to it that are not placed on the owners of merchandise, of horses and carriages, or of railroad stocks and bonds.

Then, also, it is not true that the burden " is laid . . . equally upon all who are within the description composing the class." A corner lot with a double length of sidewalk is seldom worth double the value of an adjoining interior lot of same size, but it has double the burden. Lots in the most central parts of the city are worth ten times a lot of the same size at points more remote. Yet each may have the same length of sidewalk and the same burden. The tax is no more proportional than in the case of the different rates on legacies and successions. *Curry* v. *Spencer*, 61 N. H. 624, 632.

The Massachusetts case lays a special stress on the alleged fact that landowners " have an interest in the performance of this duty, peculiar and somewhat distinct from that of the rest of the community." Judge *Shaw* makes a claim here which has small foundation in fact, speaking of " accommodating his cellar door and steps, a passage for fuel, and the passage to and from his own house to the street." But how about the owners of horses and carriages who could make small use of their vehicles and animals were it not for the streets: shall they have the care of the streets thrust upon them as a class because of their " peculiar and somewhat distinct" interest? Then it is said that the landowners have the power and ability to discharge the duty without great expense. This means that they must do it because it is convenient to them and to the community. That does not do away with the constitutional rule for the distribution of the public burdens. " The constitutional rule of equality cannot be limited or qualified by any consideration of expediency or convenience. The purpose of the act cannot change its character in this respect. Good purposes in taxation are of no consequence if the effect is to subject the taxpayer to exceptional and invidious exactions." *Curry* v. *Spencer, supra*, 631.

Finally, the suggestion is that the law is all right because it operates upon all owners of real estate in their turn, and that it ceases when they cease to hold the estate, and for that reason is not " unequal or partial in the sense of the declaration of rights, requiring all taxes and burdens to be equal and impartial." This argument can have little weight. All taxpayers can escape their burdens by giving up their property. This is not a burden imposed for the prevention of vice, pauperism, or crime, nor in behalf of property, health, life, or morals, and it comes under no definition of the police power, except on the bare assertion of the court in the case just cited. The arguments which follow show that it was not police power in fact which the court had in mind, but the convenience of the public. Neither should be an excuse for the undue distribution of public burdens. It is not only an unequal tax, but it is a double tax. The property is otherwise taxed for the care of the highways, of which the side-

walk is a part. Like the horses and wagons employed in the express business, it is unjust to demand an arbitrary further sum. *State* v. *Express Co.*, supra, 245.

In Illinois Judge *Shaw* is not followed. *Gridley* v. *Bloomington*, 88 Ill. 554.

BLODGETT, J. Among the various purposes enumerated in the act incorporating the city of Concord, and for which power is expressly given the city council to make ordinances, is that " To compel all persons to keep the snow . . . from the sidewalks in front of the premises owned or occupied by them." Laws 1849, c. 835, s. 17, p. 819. The ordinance in question, therefore, having been authorized by specific and definite legislative authority, and having also been " duly and legally adopted," has the effect of a special law of the legislature within the limits of the city and with respect to persons upon whom it may lawfully operate, and cannot be declared invalid except for unconstitutionality. 1 Dill. Mun. Cor. (4th ed.), ss. 319–322, 327, *et seq.; Tugman* v. *Chicago*, 78 Ill. 405; *Phillips* v. *Denver*, 19 Col. 179,— 41 Am. St. Rep. 230; *Brooklyn* v. *Breslin*, 57 N. Y. 591, 596; *St. Paul* v. *Colter*, 12 Minn. 41.

Under our statutes, the duty of keeping highways in repair and free from obstruction by snow or other things that impede travel or render it dangerous, is imposed upon the municipalities in which they are situate (P. S., c. 76, ss. 1, 2); and this duty extends to sidewalks as well. *Hall* v. *Manchester*, 40 N. H. 410, 415; *Stevens* v. *Nashua*, 46 N. H. 192, 195. For these purposes municipalities are empowered to " raise such sum as they judge necessary for each year," to be assessed upon all the polls and estate subject to taxation therein, and may order the same paid in money,— in which case " the tax shall be committed to the collector of taxes and be collected as other taxes," or if not so ordered, it " may be paid in labor." P. S., c. 73, ss. 1, 5, 8.

Burdened with this duty and invested with this power in respect of highways, we are of opinion that the city of Concord could not by its ordinance impose upon the defendant the labor or expense of removing the snow from the sidewalk adjoining his premises, and which constituted a part of the highway itself. Having contributed his proportional share of the public expense of keeping the highway in a suitable condition for the public travel, we are not aware of any constitutional principle upon which more can be lawfully exacted of him.

Nor should there be. A property owner has no other or greater right in or to, or control over, that part of the public street in front of his property than any other part of the highways of the town. All the streets of a municipality are equally free to the general public, who at all times are entitled to the free and unob-

structed use of every foot of them.   2 Dill. Mun. Cor. (4th ed),
*ss. 659, 683.*   It is true that the fee of the street may be, and
generally is, in the adjoining lot owner, but this can be of no
consequence, because the easement over it is in the public.   This
being so, it is plain that the lot owner has no other interest in
the street *as such* than any other citizen of the municipality.

   " The same is true of the sidewalk.   It is a part of the street
set apart for the exclusive use of persons traveling on foot, and
is as much under the control of the municipal government as the
street itself.   The owner of the adjacent lot is under no more
obligation to keep the sidewalk free from obstructions than he is
the street in front of his premises.   He may not himself obstruct
either so as to impede travel on foot or in carriages.   It will be
conceded the citizen is not bound to keep the street in front of
his premises free from snow or anything else that might impede
travel; then, upon what principle can he be fined for not re-
moving snow or other obstruction from the sidewalk in which he
has no interest other than what he has in common with all other
persons resident in the city ?   It is certainly not upon the prin-
ciple under which assessments are made against the owner for
building sidewalks in front of his property.   The cases are not
analogous.   Such assessments are maintained on the ground the
sidewalk enhances the value of the property, and to the extent
of the special benefits conferred they are held to be valid." *Grid-*
*ley* v. *Bloomington*, 88 Ill. 554, 556, 557,— 30 Am. Rep. 566, 567;
*Chicago* v. *O'Brien*, 111 Ill. 532,— 53 Am. Rep. 640.

   And, certainly, he cannot be so fined upon any principle of
taxation which obtains in this jurisdiction, for " the unconstitu-
tionality of unequal taxation is too plainly declared by our con-
stitution, and too well settled by repeated decisions made during
the last fifty-three years, to be debatable " (*Railroad* v. *State*, 60
N. H. 87, 94); and " under the constitution . . . there is no war-
rant for the imposition of any other tax than one assessed upon
a proportional and equal valuation of all the different kinds of
property on which it is to be levied." *State* v. *Express Co.*, 60
N. H. 219, 246.   And no more can he be upon any principle of
division of the public expense, for " the unconstitutionality of
an unequal division of public expense among New Hampshire
taxpayers has been settled too long and by too many decisions to
be a subject of debate or doubt."   *Ib.* 246, *per Doe*, C. J.

   True, the ordinance is not strictly a law levying a tax, the
direct or principal object of which is the raising of revenue
(*Goddard, Petitioner*, 16 Pick. 504); but it is such a law practi-
cally, both in substance and in effect, and should fairly be so
regarded.   The amount of expense from which the city is
relieved by the operation of the ordinance is equivalent to so
much revenue derived from taxation; the additional burden to

which the lot owners are subjected is none the less a tax because it is exacted in labor and not in money (P. S., *c.* 73, *s.* 8, before cited; Cool. Tax. 12); and the fine imposed for its non-performance is as useful to the city as a tax of equal amount. "Courts are not bound by mere forms, nor are they to be misled by mere pretences. They are at liberty — indeed, are under a solemn duty — to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority." *Mugler* v. *Kansas,* 123 U. S. 623, 661. In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect, and such purpose must be taken into consideration in passing on its validity. *Collins* v. *New Hampshire,* 171 U. S. 30, and authorities cited. "Its constitutionality must depend upon its real character, upon the end designed and to be accomplished, and not upon its title or professions." *Pierce* v. *State,* 13 N. H. 536, 580.

But it makes no difference, so far as the decision of this case is concerned, whether the ordinance is or is not regarded as a law levying a tax. It undeniably imposes a duty and operates as a law creating a burden which does not bear upon all citizens alike, and which makes an unequal division of public expense among taxpayers, in direct violation of the principle of equality which pervades the entire constitution, and to which all other purposes are incidental and subordinate. *State* v. *Pennoyer,* 65 N. H. 113, 114. And not only is the ordinance a palpable violation of the equality of privilege and of burden guaranteed by the constitution, but it is the taking of private property for public use without just compensation, and a denial to the persons upon whom it operates of the equal protection of the laws, within the meaning of the fourteenth amendment of the federal constitution, providing that no state shall deprive any person of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. See *Smyth* v. *Ames,* 169 U. S. 466. The amendment, however, "adds nothing to the rights and liberties of the citizens of this state. It merely confirms to them by federal sanction the rights secured by the action of their ancestors a century ago. . . . An enactment obnoxious to this provision of the national constitution is in New Hampshire no more ineffective than it would be in its absence." *State* v. *Pennoyer, supra,* 115.

It would seem unnecessary to go farther. But the ordinance stands no better on the ground that it is an exercise of the police power inherent in all municipal and state governments, and which, it may be conceded, properly extends to "the protection of the public morals, the public health, and the public safety." *Beer Co.* v. *Massachusetts,* 97 U. S. 25, 33; *Mugler* v. *Kansas, supra.* Nobody doubts that when an occasion for its exercise

exists, the police power may be invoked in behalf of these objects; but it is entirely plain that the ordinance has no real or substantial relation to any of them. It is not an exercise of restraining or protective power like the dog law, so called, or the statute empowering towns to require buildings to be provided with such ladders and buckets as may be necessary for use in case of fire, under a penalty of six dollars for every three months' neglect, and other enactments of like character, cited by the state. It is simply an unequal division, for economy and convenience only, of public expense and public burdens, among a class of taxpayers who have not only once contributed and borne their full share agreeably to their constitutional duty, but who are again required to make contribution, not proportionately and according to the valuation of their property or the benefits they receive, but disproportionately and solely according to the length of the street lines of their respective lots. This is extortion and inequality, pure and simple — and it is nothing else. See *Curry* v. *Spencer*, 61 N. H. 624, 631, 632. "An act which operates on the rights or property of only a few individuals, without their consent, is a violation of the equality of privileges guaranteed to every subject." *Merrill* v. *Sherburne*, 1 N. H. 199, 212.

But suppose the legislature, in empowering the city of Concord to adopt the ordinance, intended and understood it to be an act of the protective power, and that it may properly be so regarded, it is, nevertheless, such a manifest violation of rights secured to every citizen of the state by the fundamental law that it cannot be upheld. These rights are "paramount to all governmental authority; and this constitutional principle has never been abandoned." *Wooster* v. *Plymouth*, 62 N. H. 193, 200, and authorities cited. They are private rights of the subject, and not public rights of the state; and no legislature can invalidate or abridge them. A purely public burden cannot be laid upon a few individuals, as here attempted, by an ordinance or by any other enactment; nor can public expense be apportioned among them arbitrarily, disproportionably, and without regard to the value of their property; nor can they be subjected to double taxation, in whatever form it may be disguised, or be held responsible for the action of the elements which they could not control, and to the production of which they did not even theoretically contribute.

It is true, nevertheless, that in several of the states all these things are held to be right and proper as a legitimate exertion of the police power (*Goddard, Petitioner*, 16 Pick. 504; *Carthage* v. *Frederick*, 122 N. Y. 268), or the power to remove nuisances. *Mayor* v. *Maberry*, 6 Humph. 368. But even the police power, comprehensive as it admittedly is, has its limitations, and in this

state, at least, it is subordinate to the equality of privilege and of burden secured by the bill of rights and guaranteed by the constitution in clearly expressed provisions which mean just what they declare; and in the proposition that, in the exercise of a power to remove nuisances, a private individual may be compelled to remove an obstruction to travel which he did not create, from premises over which he has no control and which it is the statutory duty of the municipality to keep free from obstruction, we fail to discover any merit except that of novelty.

But there is no occasion to dwell upon these or other somewhat analogous decisions to which our attention has been called. They are plainly not in conformity with the often declared New Hampshire understanding of the constitutional principle of equality and the reservations of private rights of the subject, which, as before stated, are paramount to all governmental authority; and therefore, while the reasoning on which the decisions referred to are based does not commend itself to our judgment, it is only necessary to say, in the language of *Doe*, C. J., that "any law or practice of Massachusetts or any other jurisdiction, American or foreign, in which the rule of equal rights does not prevail, or taxation is an exception to that rule, is not an authority on which an unequal division of public expense can be made in this state." *State* v. *Express Co.*, *supra*, 250.

If one public burden may be shifted from the public and cast upon a certain class of property owners, upon considerations of economy, convenience, or peculiar interest, actual or supposed, others may and doubtless will be, for "it is a familiar fact that the corporate conscience is ever inferior to the individual conscience,— that a body of men will commit as a joint act that which every individual of them would shrink from did he feel personally responsible"; but it cannot be done in this jurisdiction until the constitutional reservations and guaranties intended "as a protection of the subject against the government, and of the weak subject against the powerful subject," are regarded as "glittering generalities" merely, and the reported decisions of three generations of courts are reversed. That time may come, but it has not yet arrived.

*Appeal sustained : judgment for the defendant.*

WALLACE, J., was absent: the others concurred.