Hillsborough,
Nos. 6438, 6439, 6440.

LEDA LANES REALTY, INC. *v.* CITY OF NASHUA *& a.*

EDWARD N. LEHOULLIER *& a. v.* SAME.

TURNPIKE ASSOCIATES *v.* SAME.

June 30, 1972.

*Leo R. Lesieur,* by brief and orally, for plaintiff Leda Lanes Realty, Inc.

*Leonard, Prolman, Prunier & Mazerolle (Mr. David M. Prolman* orally) for plaintiff Turnpike Associates.

*Harkaway, Gall & Shapiro (Mr. Aaron A. Harkaway* orally) for plaintiffs Lehoullier and San Remo Realty Corporation.

*Clancy & O'Neil (Mr. Thomas E. O'Neil* orally) for defendants.

DUNCAN, J. These three appeals under RSA 36:34 from decisions of the Planning Board of the City of Nashua denying approval under RSA 36:19-a of site plans for the development of tracts on Amherst Street for nonresidential uses were consolidated for argument in this court, and present identical issues with respect to the authority of the planning board under RSA ch. 36 and the ordinances of the city.

The tracts in question are situated northwest of the city center and of the traffic interchange between the Everett turnpike and Amherst Street which is part of route 101-A and a main highway to Milford.

The plaintiff Leda Lanes Realty, Inc. seeks to enlarge bowling alleys at 340 Amherst Street, by an addition to an existing building. The plaintiff Turnpike Associates seeks to enlarge a store building occupied by Rich's Shopping Center at 255 Amherst Street. At a hearing held on November 4, 1971, both applications were denied by the planning board pursuant to a policy adopted at that meeting of the board. Denial of the Turnpike Associates plan was reaffirmed at a rehearing on December 2, 1971.

The plaintiffs Lehoullier and San Remo Realty Corporation are respectively owner and lessee of a tract situated midway between the other two properties. They seek to erect a restaurant building, adjoining an existing McDonald's restaurant. Their application was denied by the board on November 18, 1971, pursuant to the policy adopted on November 4, 1971.

The minutes of the meeting of the board held on November 4, 1971, record the following action: "There was considerable discussion by Planning Board members about the ever-increasing traffic problems along Amherst Street. The ability of Amherst Street to continue to carry the increasing traffic generated by each additional development or expansion of existing business was questioned. In particular, members noted the difficulty in making left-turning movements across traffic.

"It was felt that if the Board continues to approve site plans for this area, it would become increasingly difficult to implement the TOPICS proposal for Amherst Street, or any other alternative plan. The staff indicated that traffic counts are being taken in this area, and that approximately

26,000 cars use Amherst Street in the area of Rich's on an average weekday (24-hour period). The staff mentioned the probability of several additional commercial developments seeking site plan approval in the next few weeks along Amherst Street.

"In light of the above discussion, Mr. Kudzma made a motion, seconded by Mr. Spaloss, that the Planning Board adopt a policy of restricting future development along Amherst Street which requires non-residential site plan approval of the Planning Board. This policy is to apply to Amherst Street between the F.E. Everett Turnpike and Thornton Road and will be in effect until January 1, 1973. This action has been taken because of the severe traffic problems resulting from the rapid development of Amherst Street and will provide the City with time in which to develop and execute traffic improvement plans to accommodate the growth. The City will work with the State Highway Department, which has jurisdiction over Amherst Street northwest of Airport Road, in arriving at a mutually satisfactory traffic solution to accommodate the approximately 26,000 vehicles utilizing Amherst Street each day. The motion carried 6 — 0."

The appeals were heard by the Superior Court (*Loughlin, J.*) and findings and rulings in writing were made in each case. On February 3, 1972, the court reversed the decision of the planning board in each case, and on April 7, 1972, clarified its orders by ordering that the site plans should be approved in each case. The exceptions of the defendants to the orders, findings and rulings of the trial court were reserved and transferred by the presiding justice.

We agree with the contentions of the plaintiffs that in denying their several applications pursuant to the policy which the board purported to adopt on November 4, 1971, it exceeded its authority. However, since the applications have not been determined upon their merits by the board, we overrule the order of the trial court that the applications should be granted, and remand the cases to the planning board for action not inconsistent with this opinion.

The authority of the board derives from the planning board statute originally enacted in 1935, supplemented by ordinances of the city enacted pursuant thereto. The legislative

act provided for the establishment of planning boards, whose duty it should be to devise a master plan for the development of the community, with authority to establish an official map of the municipality (RSA 36:10) for the purpose of showing its recommendations for such development (*s.* 13). Upon official adoption this becomes a public record, the purpose of which "shall be solely to aid the planning board in the performance of its duties." *S.* 15.

The statute further authorizes the city council to empower the board, after the board has adopted a major street plan, to certify plats of particular areas showing among other things, the recommendations of the board as to the planned lines of future streets, or street widenings or narrowings. *S.* 16. The city council may then establish an official map showing the locations of existing streets of all or any part of the municipality (*s.* 17) which can be thereafter amended or changed only by the council after referral to the planning board for its recommendations, notice to interested parties, and a public hearing. *S.* 18.

Additionally municipalities are empowered to authorize planning boards to approve or disapprove proposed plats of subdivisions, and streets or the widening thereof, after regulations have been adopted by the board following publication thereof and public hearing thereon. *Ss.* 19-23; *Blevens* v. *Manchester,* 103 N.H. 284, 170 A.2d 121 (1961). By amendment of the statute in 1965 provision was also made by which municipalities could authorize planning boards having subdivision regulations, to "approve, or disapprove site plans for the development of tracts for nonresidential uses whether or not such development includes a subdivision or re-subdivision of the site." RSA 36:19-a, Laws 1965, 260:3. The action of the Planning Board of Nashua in the pending cases was taken under this provision of the statute.

Section 3962 of the Nashua Ordinances, after referring to RSA 36:19-a as the source of its authority, contains the following provisions: "The Board will take into consideration the effect of the proposed development as it relates to health, safety, nuisance, property values, aesthetics, and traffic conditions.

"The primary purpose of this section is to . . . insure that

all proposed site development plans . . . show adequate means of handling (1) storm water run-off; (2) on-site vehicular ingress and egress movements in relation to traffic movements along the abutting streets; and (3) adequate off-street parking and loading facilities."

In addition, the section specifies that the three major concerns listed in the section "shall serve as the basis for determining the acceptability of a proposed site plan . . . ."

As our current planning board statute is drawn, no power to declare a blanket moratorium on the development of non-residential tracts pending completion of planning of street changes can be implied. RSA 36:16 authorizes the board to plat an area showing recommended changes in streets, but the amendment of an official plan can become effective only by action of the city council, after notice and a public hearing. RSA 36:18. Assuming effective adoption of such an amendment, showing the projected alteration of existing streets, the planning board would then be in a position to deny applications for approval of site plans which would conflict with the amended official city plan.

The inference from the statute is that in the absence of compliance with the statutory procedures with respect to the relocation of streets, the authority of the board is to be confined to regulation consistent with the official map showing existing streets without regard to projected widening. RSA 36:17; *see Magnolia Dev. Co.* v. *Coles,* 10 N.J. 223, 89 A.2d 664 (1952); *Jeffrey* v. *Platting Bd. of Rev.,* 103 R.I. 578, 587, 239 A.2d 731, 737 (1968); *Westwood Forest Estates* v. *Village of S. Nyack,* 23 N.Y.2d 424, 244 N.E.2d 700, 297 N.Y.S.2d 129 (1969).

In the light of the enabling statute, section 3962 of the Nashua Ordinance must be interpreted to limit the board to control of onsite vehicular access "in relation to traffic along the abutting streets", so as to provide suitable ingress and egress from and to the existing public street. *See* 3 Anderson, American Law of Zoning *s.* 19.36 (1968).

Practical considerations may serve to prompt a developer to take into account the economic loss which may result both to him and to the community, if plans are carried out with reference to existing conditions only. The prospect that a

development may be rendered impracticable by future changes, through the exercise of the powers of eminent domain, may well counsel voluntary delay or alteration of planned development by the developer.

Statutory provisions for the establishment of interim development controls which are more extensive than those afforded only by amendment of an official city map as provided by RSA ch. 36, exist in some other jurisdictions, and may be considered a useful tool of planning. *See* Freilich, Interim Development Controls: Essential Tools for Implementing Flexible Planning and Zoning, 36 J. of Urban Planning 65 (1971). *See also* 1 Anderson, American Law of Zoning *s.* 5.15 (1968). Except as provided by RSA 36:18, however, that tool is not presently available here, and in the circumstances disclosed by the record could not be utilized by the Nashua Planning Board on November 4, 1971. *Lordship Park Ass'n* v. *Board of Zoning Appeals,* 137 Conn. 84, 89-90, 75 A.2d 379, 381 (1950). Nor could the statement of policy then adopted qualify as a subdivision regulation of the board. RSA 36:21-22.

Accordingly, the orders of the board are vacated, and the cases are remanded for further proceedings before the board, in the light of this opinion. For reasons previously stated, the order of the court that the applications be granted is vacated.

*Defendant's exceptions overruled*
*in part and sustained in part;*
*remanded.*

All concurred.