Merrimack
No. 6697

Eugene O. Isabelle

v.

Town of Newbury

June 28, 1974

Leahy & Denault (Albert D. Leahy, Jr. orally) for the plaintiff.

Upton, Sanders & Smith (J. Gilbert Upton orally) for the defendant.

PER CURIAM. This petition for certiorari under RSA 36:34 to review denial by the Planning Board of Newbury of plaintiff's application for subdivision raises issues of scope of authority of the planning board in applying its regulations and of the extension of a nonconforming use. The issues were submitted to the trial court on an agreed statement of facts and transferred without ruling by Grant, J.

Petitioner owns a lot in Newbury which has ninety-five feet of frontage on Lake Sunapee and one hundred thirty-five feet of frontage on a public road. The lot, which is 28,760 square feet in area, contains three structures — a large cottage and a small guesthouse near the road and a second cottage close to the lake. Each building has a separate, state-approved septic system. For a number of summers before 1971, petitioner had leased out, as a unit, the large cottage and guesthouse and had himself occupied the cottage close to the lake. In July of 1971, petitioner negotiated to sell to his tenant of several summers the two structures located near the road. The contract was made subject to obtaining subdivision approval and "State Water Pollution Board" approval.

In August of 1971, petitioner submitted to the planning board a preliminary plan of his proposed subdivision whereby the two structures near the road, a 10-foot right of way to the lake, and 8,300 square feet of land would be sold. The board rejected the plan stating that the two lots as divided did not comply with a required state minimum lot size of 30,000 square feet nor with a town minimum of 20,000 square feet. On September 30, the New Hampshire Water Supply and Pollution Control Commission approved the septic systems. Petitioner later submitted a revised plan to the town planning board proposing to sell the same structures and

a lot of 15,400 square feet. After a hearing on the matter, the board denied this plan reasoning that "due to the lot size, length and width and the proximity of said buildings to each other and to Lake Sunapee [the subdivision] would be contrary to public health, safety and welfare and contrary to land subdivision regulation . . . ." From this ruling petitioner filed for certiorari.

As authorized by RSA 36:21 (Supp. 1973), Newbury adopted "Land Subdivision Controls" regulations effective August 4, 1971. The enabling statute provides in part that such regulations "may prescribe minimum areas of lots so as to assure conformance with local zoning ordinances . . . and generally may include provisions which will tend to create conditions favorable to health, safety, convenience or prosperity." Section V A of the town regulations provides that the land use proposed for a land subdivision "shall conform to the Newbury Zoning Ordinance of 1970 as amended and to any other pertinent state or local laws or regulations." See also Section V C. According to plaintiff's proposed revised subdivision plan, the lot fronting on the lake would have no frontage on a public way. Evidence indicated petitioner's land sloped sharply from the road toward the lake. The board could reason that, in case of fire, access to the lakeshore lot might be jeopardized by separate ownership of the lot fronting on the road. Further, under the regulations the board could consider the greater likelihood of overcrowding and of difficulty in enforcing health and sanitary regulations if the ownership of the property were divided between two owners. *Clemons v. Los Angeles,* 36 Cal. 2d 95, 100, 222 P.2d 439, 442 (1950).

At the time the Newbury zoning ordinance was first enacted, petitioner's lot failed to comply in only one respect. One of the buildings sought to be conveyed is located within 30 feet of a public right of way. If subdivided, the property would further violate the frontage and minimum lot size requirements. Petitioner would create one 15,400 square foot lot and one 13,360 square foot lot, both under the 20,000 square foot minimum of the regulations. One lot would have no frontage on a public road and the other lot no frontage on the lake, both violations of the ordinance. The creation

of two lots would thereby substantially change the nature and extent of the previous nonconforming use. The planning board could properly take into account the policy of carefully limiting the extension of nonconforming uses. RSA 36:21; *Arsenault v. Keene,* 104 N.H. 356, 187 A.2d 60 (1962); *Flanagan v. Hollis,* 112 N.H. 222, 293 A.2d 328 (1972). "Where a proposed addition to a nonconforming use greatly increases the intensity of use of premises and would create a substantially greater deviation from the standards contained in an ordinance, the extension of the nonconforming use will not be permitted." 2 E. Yokley, Zoning Law and Practice § 16-7, at 239 (3d ed. 1965); *see Ackley v. Nashua,* 102 N.H. 551, 163 A.2d 6 (1960). Accordingly, the planning board was within both its regulations and its authority in denying petitioner permission to subdivide. *Cloutier v. State Milk Control Board,* 92 N.H. 199, 203, 28 A.2d 554, 557 (1942).

*Petition dismissed.*

GRIMES, J., dissented.

GRIMES, J., dissenting: I respectfully dissent from the court's resolution of both issues raised by the petition for certiorari. I think the scope of the planning board's authority must be considered in light of the State enabling act, RSA 36:19-30, and the particular regulations enacted pursuant to it by the town of Newbury. *Levin v. Livingston Tp.,* 35 N.J. 500, 173 A.2d 391 (1961). The first sentence of RSA 36:21 provides that planning boards, in order to exercise any power, "shall" enact regulations. Following this is an extensive list of items which the regulations "may" cover. The clear import of these sections is that towns must first promulgate regulations and, once promulgated, the towns themselves are bound by them. *Castle Estates, Inc. v. Park and Planning Bd.,* 344 Mass. 329, 182 N.E.2d 540 (1962); 3 A. Rathkopf, Law of Zoning and Planning § 9, at 71-82 (1972).

I do not think section V C of the subdivision regulations applies to this petitioner's property and I do not think it should be construed as a general grant of discretionary police power to the board. The provision was obviously designed

to act prospectively and to prevent structures from being built on land which is not suited for them. I can find no evidence, other than the board's actual denial of the permit, that the plot in question "cannot be safely used for building purposes", poses an "exceptional danger to health or peril from fire", or is even "being platted" in the prospective sense. Indeed, the existence and use of the structures on this land for the last twenty years belies the reasonableness of any of these inferences. Since these regulations stand in derogation of important property rights, they should be construed strictly and they should not be extended by implication. 1 R. Anderson, American Law of Zoning §§ 12.02, 12.03 (1968); *see Leda Lanes Realty, Inc. v. Nashua,* 112 N.H. 244, 293 A.2d 320 (1972).

On the second issue, I concede that petitioner's lot is a nonconforming use in that one of the structures is within 30 feet of a public right of way. But the sale of half the lot in no way represents an extension of that use. One of petitioner's primary arguments, which the court ignores, is that the particular regulations at issue do not apply to his subdivision. Article II of the zoning ordinance provides, "[t]his regulation does not affect existing land use and/or regulations." Article V C, specifying requirements for lakeshore property, states that, "[e]very *new dwelling* shall have a lakeshore frontage of not less than seventy-five (75) feet and a lot area of not less than twenty thousand (20,000) square feet." (Emphasis added.) Thus, by their express and unambiguous terms, the particular regulations, which the majority thinks the property as divided violates, do not even apply to petitioner's property.

Secondly, even if the word "new", were not in the regulations, this sale would not be an extension of a nonconforming use. Authority is overwhelming that a mere change from tenant occupancy to owner occupancy is not an extension of a nonconforming use. *Beers v. Board of Adjustment,* 75 N.J. Super. 305, 183 A.2d 130 (1962); *MacLean v. Planning Bd.,* 94 N.J. Super. 288, 228 A.2d 85 (1967); 1 R. Anderson, American Law of Zoning § 6.35 (1968). I think the proper approach to this issue is to consider the actual use of the property before and after the subdivision. Petitioner's land

for the last twenty years has in effect been used as two separate lots. Access, frontage and lot size for the three structures would be the same after the subdivision as it was before. A change of title, therefore, makes no difference. The conclusion that splitting ownership would "substantially change the nature and extent of the previous use" strikes me as illogical.