Rockingham
No. 6908

JOHN A. NAVIN & a.

v.

TOWN OF EXETER & a.

May 30, 1975

*Perkins, Holland, Donovan & Beckett (Mr. William H. M. Beckett* orally) for the plaintiffs.

*Scammon, Gage & Whitman (Mr. Robert G. Whitman* orally) for the town of Exeter.

*Gerald R. Prunier,* by brief and orally, for defendant Brickside Corporation.

LAMPRON, J. Appeal to the superior court under RSA 31:77 from a decision of the Zoning Board of Adjustment of the town of Exeter granting a variance to Brickside Corporation allowing it to construct six twelve-unit apartment buildings on 12.63 acres of its land on Kingston Road. These were in addition to a variance granted in 1969 to construct four such units on this same tract which is part of about 87 acres owned by it. Hearing before a Master (*Leonard C. Hardwick,* Esq.) who made certain findings and rulings and a recommendation that the appeal be dismissed. The Court (*Morris,* J.) approved the report and issued a decree in accordance with the recommendation. Plaintiffs' motion to set aside the master's report and the court's decree was denied and its exceptions reserved and transferred.

Plaintiffs' appeal in this court rests on the following grounds: (1) The board of adjustment could not reasonably find on all the evidence before it that Brickside met the requirements of RSA 31:72 III for the granting of a variance; (2) certain members of the board had not taken the oath of office required by RSA 92:2 thus nullifying the action of the board; (3) the board could not grant a variance of the terms of the existing ordinance while a new ordinance affecting the status of the land in question was in the process of adoption and was adopted; (4) the master's report should be set aside for his failure to rule specifically on plaintiffs' requests for findings and rulings.

We consider first plaintiffs' argument that the variance granted under the existing zoning ordinance during the pendency of a new ordinance is invalid. The existing ordinance classified the 12.63-acre tract as "Rural-Residential" (Exeter Zoning Ordinance Art. 3, 2 (1972)) wherein were permitted buildings of "Four or less family dwelling units" (*Id.* art. 3, 1 A (1)) with a minimum area requirement of one acre per building (*Id.* art. 3, 2B). Brickside acquired in 1968 its 87-acre tract, of which the 12.63 acres

are a part, and recorded a plan showing a proposed development of this land into residential lots.

On July 2, 1969, Brickside applied for a variance for the construction of ten twelve-unit apartment buildings on the 12.63 acres in question. The adjustment board granted a variance to build four of these with a stipulation that "future construction contemplated would necessitate application for further variance." Under our holding in *Amherst v. Cadorette*, 113 N.H. 13, 300 A.2d 327 (1973), this 1969 variance did not create vested rights which would affect the present application by Brickside for a variance to build six additional twelve-unit apartment buildings filed February 12, 1973. *Riverview Park Inc. v. Hinsdale*, 113 N.H. 693, 695, 313 A.2d 733, 734 (1973).

On December 28, 1972, a notice of a first public hearing to be held January 18, 1973, on a proposed new zoning ordinance for the town was published in a local newspaper together with its provisions. A notice dated January 25, 1973, of a second hearing on the proposed ordinance to be held February 15, 1973, together with its terms was also published in the same newspaper. RSA 31:63-a. It stated that the proposals were to be presented to the voters for consideration at the annual town meeting on March 6, 1973. The new ordinance was adopted at that meeting effective forthwith. It changed the classification of Brickside's property from "Rural Residential" to "R-1 Low Density Residential" which requires more land area per dwelling unit.

Brickside's application sought a variance from article 3, section 2A (1) of the 1972 ordinance to construct six additional twelve-unit apartment buildings on its 12.63-acre tract. The board of adjustment gave notice that a hearing was to be held on March 5, 1973 on Brickside's application for a variance from that article and section. On March 22, 1973, the board granted a variance from that same article and section concerning Brickside's property referred to in its notice as in a "rural residential zone." A rehearing was sought by the plaintiffs and held on May 21, 1973, after which the board reaffirmed its prior decision and the present appeal followed.

In their requests for findings and rulings No. 17 the plaintiffs called the master's attention to RSA 156:3-a (Supp. 1973) which prohibits building inspectors from issuing any building permit after the first legal notice of a proposed change in a zoning ordinance has been posted if the proposed changes, if adopted, would justify refusal of the permit. They argued that a similar

prohibition should apply to the zoning board with respect to the granting of a variance, and to the building permit which follows. The master found and ruled as follows: "The Board of Adjustment differs in consideration of application for variance from a building inspector considering the granting of a permit. The inspector is bound by a specified code. Judgment that he has to exercise is at a minimum. However, the Board is free to exercise its judgment. It very well might, in considering whether a variance should be granted under the 1972 ordinance, give consideration to the fact that changes were in the wind. Having so considered, there would be nothing to prevent them from then deciding that the variance should be granted even if changes might be around the corner. It must be assumed that the members of the Board had knowledge of the proposed changes.

"The Master finds and rules that the Board had authority and jurisdiction to consider Brickside's application."

Our law is well established that a permit obtained under an existing ordinance becomes invalid upon a change in the ordinance which would not permit its issuance unless the holder has obtained vested rights to warrant its retention. Such rights are acquired "where the owner, relying in good faith upon a permit and before it has been revoked, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both . . . ." *Winn v. Corporation,* 100 N.H. 280, 281, 124 A.2d 211, 213 (1956); *Mobil Oil Corp. v. Keene,* 112 N.H. 155, 157, 290 A.2d 628, 629-30 (1972). Similarly a property owner has no right in the continued existence of any particular classification of his property. *R. A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 289 A.2d 646 (1972); *see* 2 A. Rathkopf, The Law of Zoning and Planning § 1 (3d ed. 1972).

Accordingly the town of Exeter could properly undertake to amend its zoning ordinance. RSA 31:63-a; *see Cutter v. Durham,* 109 N.H. 33, 241 A.2d 216 (1968). It had started such a procedure some seven weeks before Brickside filed its petition for a variance. The proposed ordinance was adopted and became effective the day after the board of adjustment held a hearing on the application and the new ordinance had been in effect some two weeks before the board granted the variance and about two months when the board affirmed it on rehearing.

There is substantial authority to the effect that if an applicant files for a permit during the pendency of an amendment to the ordinance, which if adopted will change the status of his prop-

erty, he acquires no right to obtain a permit to build under the zoning law existing prior to the adoption of the amendment in the absence of vested rights acquired in the manner previously discussed. *Mobil Oil Corp. v. Keene,* 112 N.H. 155, 157, 290 A.2d 628, 629-30 (1972); *Boron Oil Co. v. Kimple,* 445 Pa. 327, 284 A.2d 744 (1971); *First Nat'l Bank v. Skokie,* 85 Ill. App. 2d 326, 229 N.E.2d 378 (1967); *see* Annots., 138 A.L.R. 500, 505 (1942); 169 A.L.R. 584 (1947); 75 A.L.R.2d 168, 236-37 (1961). It would be "utterly illogical to hold that . . . any person could by merely filing an application compel the municipality to issue a permit which would allow him to establish a use which he either knew or should have known would be forbidden by the proposed ordinance, and by so doing nullify the entire work of the municipality in endeavoring to carry out the purpose for which the zoning law was enacted." *Chicago Title & Trust Co. v. Palatine,* 22 Ill. App. 2d 264, 270, 160 N.E.2d 697, 700 (1959). However, an unduly prolonged procedure in considering amendments to a zoning ordinance will not be permitted to be used by a municipality to impose either a selective or a general moratorium on local land development. *See Leda Lanes Realty, Inc. v. Nashua,* 112 N.H. 244, 248-49, 293 A.2d 320, 323 (1972); *Boron Oil Co. v. Kimple,* 445 Pa. 327, 332-33, 284 A.2d 744, 747 (1971).

Our legislature has recognized the problems which would result from a race by landowners to the zoning office to obtain rights under the existing ordinance when the municipal authorities have announced publicly a contemplated change in zoning in the interest of the community. The legislative concern was crystalized in the enactment of RSA 156:3-a (Supp. 1973) which prohibits the issuance of permits by building inspectors during the pendency of an amending ordinance if the proposed changes would not justify their issuance. We see no substantial difference between the legal status of a permit which can be obtained directly from the zoning administrator because the project complies with the terms of the ordinance and a permit which is obtained from the administrator after the board of adjustment has granted a variance of the requirements of the ordinance to permit its issuance.

Brickside applied for a variance of the terms of the existing ordinance while a new ordinance was pending and going through the proceedings for its final adoption. It was then evident that on passage the amended ordinance would change the classification of its property from a "Rural-Residential" district to an "R-1

Low Density Residential" district. The minimum lot requirement thereunder would be 30,000 square feet per dwelling unit (Exeter Zoning Ordinance art. 4, 4.30 (1973)) as compared to one acre for a building of four or less family dwelling units under the existing ordinance. *Id.* art. 3, 1A (1), 2B (1972). There is no evidence in the record that Brickside, relying in good faith upon the variance, in this case, "has made substantial construction on the property or has incurred substantial liabilities relating directly thereto." *Winn v. Corporation,* 100 N.H. 280, 281, 124 A.2d 211, 213 (1956). There was evidence that the fourth building authorized under the 1969 variance was not completed at the time Brickside applied for the present one. Furthermore the board of adjustment specifically stated under the 1969 variance that a new variance would be needed for additional construction.

We hold that under the circumstances of this case Brickside has not acquired a right to receive a permit to construct the additional six twelve-unit apartment buildings which it sought because a variance of the terms of the existing 1972 ordinance was granted by the board of adjustment during the pendency of the 1973 amending ordinance. The court's decree dismissing plaintiffs' appeal is vacated. In view of the result reached it is unnecessary to consider the other grounds relied on by the plaintiffs.

*Plaintiffs' exceptions sustained.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., dissenting:
Since the variance was granted after the new ordinance became effective I think the master and the trial court were right.