Belknap
No. 7543

ROBBINS AUTO PARTS, INC.

v.

CITY OF LACONIA

March 31, 1977

*Wescott, Millham & Dyer,* of Laconia (*Mr. Peter V. Millham* orally) for the plaintiff.

*Colin A. Norberg,* city solicitor, of Laconia, by brief and orally for the defendant.

GRIMES, J.   The issue in this case is whether the Laconia Planning Board may legally require plaintiff to grant the city an easement for highway purposes as a condition for the approval of a site plan. We hold that it may not.

Plaintiff applied to the Laconia Planning Board for approval of a site plan to construct a building for the retail sale of auto parts on a lot on Union Avenue in Laconia upon which were the remains of a service station which had been destroyed by fire. The site plan was approved under certain conditions not relevant here, and to which no objection is raised but also on the condition that an easement be given the city of Laconia "for a ten-foot section running along your front property line." Plaintiff gave a deed of the easement under an agreement that it could contest the legality of the condition and brought this petition for declaratory judgment. The matter was submitted to a Master (*Leonard C. Hardwick,* Esq.) on an agreed statement of facts and the master ruled that the board lacked authority to impose the condition and that the condition was a taking of land without due process and therefore unconstitutional. His report was approved and a decree was entered in accordance with the recommendations that the city be ordered to reconvey the easement to plaintiff and that the matter be re-

manded to the planning board. All questions of law raised by the agreed statement of facts were reserved and transferred by *Batchelder, J.*

According to the agreed statement of facts, the planning board has adopted a policy of requiring all persons seeking site plan approval on certain streets, including Union Avenue, to give a ten-foot easement to facilitate widening of those streets in the future as required by traffic conditions. The widening of Union Avenue is not made necessary by the plaintiff's proposed building but rather from conditions of traffic generally. The city relies upon RSA 31:60, RSA 36:19 and :19-a, and RSA 31:62 as well as upon RSA 31:39 (Supp. 1975) to support its position. We find nothing in these statutes which purports to give planning boards the authority to require an applicant for site approval to grant to the city an easement for the purposes of widening an existing street. *See Leda Lanes Realty, Inc. v. Nashua*, 112 N.H. 244, 293 A.2d 320 (1972).

In *KBW, Inc. v. Bennington*, 115 N.H. 392, 342 A.2d 653 (1975), a majority of the court upheld a condition to a subdivision approval that the subdivider bear the cost of improving the road running past the subdivision. However, in that case it was said to be findable that the improvements to the road were required only because of the proposed subdivision. In the case before us, however, the widening of Union Avenue is not made necessary only because of the plaintiff's proposed building but because of general traffic conditions.

Moreover, in this case it is clear that the widening of Union Avenue will create a benefit which is common to the public in general. *See State v. Jackman*, 69 N.H. 318, 41 A. 347 (1898); *Manchester v. Straw*, 86 N.H. 390, 169 A. 592 (1933). According to the agreed statement, some 19,000 cars use Union Avenue daily in July and August on a street which, with parking, has a capacity of only 6,000 cars per day.

The requirement that plaintiff deed an easement to the city as a condition of site plan approval does not constitute, as the city argues, "merely a restriction of use of the 10-foot strip involved." It is not a mere requirement that plaintiff not build on the strip, but is rather a requirement which gives to the city the right to use the land for a public purpose. It is clear that if the city were to take this easement by eminent domain, the plaintiff would have a constitutional right to be compensated for it. N.H. CONST. pt. I, art. 12; *Piscataqua Bridge v. New Hampshire Bridge*, 7 N.H. 35

(1834). The city by this condition is seeking to do indirectly what it cannot do directly.

The right of a citizen not to have his property taken from him for public use without just compensation is a fundamental right, the roots of which reach back to Magna Carta. City officials have no legitimate interest in attempting to extort from a citizen a surrender of this right as a price for site plan approval. Nor can such a condition be supported under the so-called police power. The right to just compensation is a constitutional restriction on the police power and is therefore superior to it. We therefore hold the condition to be invalid.

Plaintiff in its brief indicates that it would have no objection to a set-back requirement which would eliminate interference with the widening of the street when it occurs. This might be in the interest of both the plaintiff and the city. *See Leda Lanes Realty, Inc. v. Nashua,* 112 N.H. 244, 293 A.2d 320 (1972).

*Exceptions overruled.*

KENISON, C.J., dissented in part; DOUGLAS, J., did not sit; the others concurred.

KENISON, C.J., dissenting in part: The majority states that planning boards do not have statutory authority "to require an applicant for a site approval to grant to the city an easement for the purposes of widening an existing street." *Leda Lanes Realty, Inc. v. Nashua,* 112 N.H. 244, 293 A.2d 320 (1972), is not authority for the court's decision. In that case we held only that a planning board was without authority to declare a blanket moratorium on the development of nonresidential tracts where the planning of street changes had not been completed. 2 E. Yokley, Zoning Law and Practice § 11-3, at 11 n.27 (Supp. 1976). Subsequent to *Leda Lanes,* the legislature passed a statute authorizing municipalities to adopt interim zoning ordinances. Laws 1973, ch. 534; RSA ch. 36-C (Supp. 1975); *see* 1 R. Anderson, American Law of Zoning 2d § 5.21 (1976); 1 N. Williams, American Land Planning Law ch. 30 (1974); Annot., 30 A.L.R.3d 1196 (1970). In this case there is no blanket moratorium of development. The board is merely conditioning approval of the nonsubdivision site plan upon the plaintiff's grant of an easement to the city for the purpose of widening the street abutting the plaintiff's property.

It is well established that a planning board may condition approval of subdivision plans upon the developer's dedication of land for the construction of streets within the development and the widening of streets abutting the plat. 3 R. Anderson, American Law of Zoning § 19.32 (1968); D. Hagman, Urban Planning and Land Development Control Law § 138 (1971). We have held that, under RSA 36:19 and :22, the planning board has the authority to condition approval of a subdivision plan upon the landowner's improvement of existing roads and dedication of land to improve access. *KBW, Inc. v. Bennington,* 115 N.H. 392, 342 A.2d 653 (1975). This case does not involve a subdivision. The question presented, therefore, is whether the power to condition subdivision proposals extends to nonsubdivision site plans. The majority gives no reason why the board lacks such authority. Indeed RSA 36:19-a specifically extends to the board the authority to approve or disapprove "site plans" whether or not they involve subdivisions. If the board has the power to disapprove a site plan outright, it certainly has the authority to place conditions upon the approval. The existence of such authority under our statute seems clear. *Leda Lanes Realty, Inc. v. Nashua,* 112 N.H. at 247, 293 A.2d at 322. The power of a municipal body to deny a nonsubdivision building permit unless the landowner dedicates a portion of land for the purpose of allowing the city to widen an abutting street is not unique to New Hampshire. *See People v. Curtis,* 255 Cal. App. 2d 378, 63 Cal. Rptr. 138 (1967); *Southern Pacific Co. v. Los Angeles,* 242 Cal. App. 2d 38, 51 Cal. Rptr. 197 (1966). I express no opinion as to whether the board could properly exercise its authority in this case. I dissent only to the extent that the majority denies the board's statutory authority.