Rockingham,
No. 5080.

JOHN KOSTRELES *v.* PORTSMOUTH *& a.*

Argued January 2, 1963.

Decided January 31, 1963.

*James Koromilas* and *Paul V. Brown, Jr.* (*Mr. Brown* by brief and orally), for the plaintiff.

*John C. Driscoll*, city solicitor (by brief and orally), for the defendants.

WHEELER, J. The parties stipulated in part as follows:

"It is hereby mutually agreed by the parties to this action that for the purpose of trying this case the following shall be considered as the facts and all of the facts subject to any legal objections which shall be considered by the court and upon which it shall render judgment:

"1. On September 29, 1960, petitioner applied to petitionee as 'Licensing Authority' under the Mobilehome Ordinance of said city, for a license/permit for a Mobilehome Park.

"2. The application was referred to the City Council, City of Portsmouth, New Hampshire, which in turn referred the application to the Planning Board, City of Portsmouth, New Hampshire for consideration and public hearing.

"3. Such consideration and public hearing took place on June 8, 1961, in accordance with said ordinance and in accordance with the regular rules and procedures that govern a public hearing in said city. The controlling provisions of the municipal ordinances are in Chapter 24 of the Municipal Ordinances of the City of Portsmouth, New Hampshire, entitled Mobilehome Ordinance.

"4. On August 17, 1961 the Planning Board voted that the Mobilehome Park plans were approved and that the proposed Mobilehome Park complied with said ordinance.

"5. On September 11, 1961 the Planning Board reported back to the City Council as follows: 'That it be recommended to the

City Council that the Kostreles Mobilehome Park Plans as presented and dated August 1, 1961 be approved.'

"6. On September 11, 1961 the City Council tabled the matter to the meeting of September 25, 1961.

"7. On September 25, 1961 the City Council referred the matter to the City Attorney because the question arose as to whether or not The City Council, at that point, had any discretion to deny the granting of the petitioner's request for a license/permit for a Mobilehome Park.

"8. On October 2, 1961 the City Attorney, John C. Driscoll, reported back to the City Council as follows: 'Re: Kostreles Mobilehome Park — Gentlemen: At the last meeting of the Council the question of its authority to grant a Mobilehome Park Permit was referred to this office for a determination. The procedure for the granting of a permit is initiated by a petition to the council. The petition is then referred to the Planning Board for a public hearing and its approval of the plans. The Planning Board upon presentation of the evidence and a review of the plans submitted by the petitioner, makes a determination as to whether or not the petitioner has complied with the provisions of the Mobilehome Ordinance. In this instance a public hearing on the petition was held June 8, 1961, and at the August 17, 1961 meeting of the Planning Board, it was voted to recommend to the Council that the Kostreles Mobilehome Park Plans, dated August 1, 1961 be approved. The Planning Board has voted that the proposed park complies with the provisions of the Mobilehome Ordinance. With this being the report of the Planning Board and there being nothing to controvert the findings of the Planning Board and there being no provision in the ordinance for such a procedure, for the council to refuse a permit would be an arbitrary action. So it is, therefore, my opinion based on the above, that the Council has no discretion in this matter.'

"9. After receiving the city attorney's report, on October 2, 1961 the City Council recommitted the matter to the Planning Board for rehearing.

"10. On October 4, 1961 petitioner delivered a demand to petitionee as follows: 'Re: Mobilehome Park/Permit License — Having applied for a Mobilehome Park/Permit License and having complied with the zoning ordinance and mobilehome ordinance of the City of Portsmouth, New Hampshire and the City Council of the City of Portsmouth, New Hampshire having

no discretion to deny the granting of such a permit/license by the licensing authority, namely, the City of Portsmouth, New Hampshire, and its administrative departments under the direction of the city manager, demand is hereby made upon the licensing authority to grant to applicant a mobilehome park permit/license. In the event that this demand is not complied with by the licensing authority, it is the intention of the applicant to take legal action against the licensing authority and hold it responsible for such damage as may result to applicant from refusal by licensing authority to grant to applicant a mobilehome permit/license.'

"11. On October 11, 1961 the Planning Board voted unanimously as follows: 'That the Kostreles application be referred back to the City Council with the note that there is no basis or reason for a further public hearing by the Planning Board.'

"12. At the October 23, 1961 meeting of the City Council, attorney Gerald Giles, representing several area residents, filed a petition . . . . and asked for a public hearing by the council on the matter; attorney Giles also filed with the council a letter of one Glenn Stewart of the University of New Hampshire . . . then the City Council voted to hold its own public hearing on the matter and allow both sides to be heard provided the city attorney rules that there is no legal objection to the public hearing. Also, the council voted that the public hearing be held on the 20th of November. On the afternoon of November 20, 1961 petitioner's attorney filed with the City Clerk the following objection addressed to the Honorable Mayor and City Council, City Hall — 126 Daniel Street, Portsmouth, New Hampshire: 'Gentlemen: Re: Mobilehome Park Permit/License. Since it is my client's position that the public hearing to be held by the City Council on November 20, 1961 on his application for a Mobilehome Park permit/license is illegal he having complied with the zoning ordinance and the mobilehome ordinance of the City of Portsmouth, New Hampshire and the City Council having no discretion to deny the granting of such permit/license by the licensing authority and there being no provision authorizing the conduction of such public hearing; and since my client does not wish to waive any of his rights by taking part in such public hearing; my client hereby objects to the conduction of same and refuses to take part therein.' Also he filed with the city clerk a petition favoring the mobilehome park signed by, in excess of, four hundred and fifty persons.

"14. Petitioner denied the City of Portsmouth, New Hampshire permission to enter upon the premises in question for the purpose of conducting percolation tests on or about November 17, 1961.

"15. On November 20, 1961 at approximately 7:52 p.m., the above mentioned public hearing was held by the City Council. Mr. Wholey asked city attorney Driscoll if he had anything to say on the legality of the hearing. Mr. Driscoll said that it was [his] opinion that the hearing could hardly be classified as arbitrary inasmuch as it was to elicit additional information. Also, he said it was his opinion that the City Council is the, licensing authority that grants or refuses to grant licenses.

"16. On November 20, 1961, after the public hearing the City Council denied the petitioner's application for a permit/license for a Mobilehome Park . . . .

"17. A Mobilehome Park permit/license has not been issued by petitionee to petitioner.

"18. It is the position of the petitioner that he has done and performed all acts necessary to entitle him to the issuance of a Mobilehome Park permit/license and that the denial by the licensing authority of his application for such permit/license was arbitrary and without legal authority and that the licensing authority should be compelled to issue such permit/license forthwith. Also, that petitionee be ordered to compensate petitioner for damages caused to him by the failure of the licensing authority to issue to him such permit/license.

"19. It is the position of the licensing authority that such denial was not arbitrary and without legal authority and that therefore petitioner is not entitled to compensation for alleged damages and that the petition bringing the matter to the attention of this court should be dismissed."

The Portsmouth mobilehome ordinance, which became effective November 19, 1956, provides for the annual licensing of mobilehome parks, as well as single trailers and mobilehomes. Sec. 24-601 directs that before land is acquired for such a park, the city manager should be consulted as to whether the proposed site will comply with city health regulations, and with the regulations of the planning board with respect to subdivision of land. Sec. 24-205 requires that "for the purpose of obtaining an original permit" for such a park, plans of the proposed improvements "shall be filed with the planning board at least 30 days before action is taken by the licensing authority." Detailed requirements with respect to "Permitted Locations" for such parks are

specified by sec. 24-602, including a requirement that the "site . . . shall be so located that its drainage will not endanger any water supply" and "shall not be subject to . . . the probability of flood or erosion."

The plaintiff claims that since his application was approved by the planning board, no further approval was required under the ordinance; and that since the issuance of a permit was thereafter purely a ministerial duty, mandamus will lie.

While the procedural provisions of the ordinances are perhaps not models of clarity, we think it reasonably plain from the ordinance as a whole that the city council is charged with the exercise of discretion with respect to the issuance of permits on behalf of the city which is itself designated as the "Licensing Authority"; and that the function of the planning board under the ordinance is advisory only. Thus section 24-602 *supra,* in subsection (A) (5), provides that where an "original license" for a mobilepark is applied for, the request shall be referred to the planning board for public hearing and the "City Council shall defer any allowance of license until Planning Board recommendations and findings have been completed." By other sections, hearings before the city council are provided for in instances of charges of violation of the ordinance (sec. 24-402), or when emergency orders are issued by the city board of health. Sec. 24-406. Sections 24-404 and 24-405 require records to be kept of such hearings, and provide for appeal to the Superior Court from "a decision of the City Council."

In the absence of special grants of authority (RSA 36:16, 19, 26) the general function of a planning board is to prepare a master plan for the development of a municipality, and to investigate, advise, and recommend with respect to municipal planning. RSA 36:10-15.

As we interpret the ordinance, the city council is charged with the duty of passing upon applications for permits, and the function of the city clerk with reference thereto is merely the ministerial function of issuing the permit when the application has been granted by the council.

Since the council acted within the discretion conferred upon it by the ordinance, the order is

*Petition dismissed.*

All concurred.