Rockingham
No. 79-149

TOWN OF SEABROOK

v.

TRA-SEA CORPORATION

December 28, 1979

*John D. Colliander* and *Michael J. Donahue,* of Exeter (*Mr. Donahue* orally), for the plaintiff.

*Patricia T. Christo,* of Portsmouth, by brief and orally, for the defendant.

DOUGLAS, J.   This case presents the issue whether the Seabrook Planning Board (hereinafter board) has the statutory authority under the town's zoning ordinance and subdivision regulations to enjoin Tra-Sea Corporation (hereinafter Tra-Sea) from conveying lots out of a tract of land. The case was heard before a Master (*Charles T. Gallagher,* Esq.), who denied the town's petition for permanent injunction. *Mullavey,* J., approved the master's recommendation, and reserved and transferred the plaintiff's exceptions to this court.

In March 1972, Tra-Sea recorded a subdivision plan in the Rockingham County Registry of Deeds. The subdivision plan depicted seventeen lots, which Tra-Sea intended to rent on a lot-by-lot basis to mobile home owners, with the ultimate objective of selling the lots. From the recording of the plan in 1972 to the present, Tra-Sea has continued without interruption to lease lots to mobile home owners. Tra-Sea has installed a road and made improvements on the individual lots.

At the time of the recording of the Tra-Sea subdivision plan, there was no subdivision regulation or zoning ordinance in effect in Seabrook. The town subsequently adopted subdivision regulations effective in April 1972 and enacted a zoning ordinance in 1974. The zoning ordinance set minimum area and frontage requirements pursuant to RSA 31:60 with an exemption or grandfather clause, contained in section IV:B. That clause provided in pertinent part:

> #B. *Area and Frontage:* No building shall be erected, placed, moved or otherwise located on a lot containing less than 12,500 square feet in area, or less than ninety (90) feet of frontage on an existing road, and has an average width of ninety (90) feet *unless such lot is on record in the Rockingham County Registry of Deeds prior to the enactment of this ordinance.* . . . (Emphasis added.)

The board argues first that the minimum lot size requirements contained in the Seabrook zoning ordinance may be applied to Tra-

Sea's undersized lots, absent a showing that the lots would be rendered valueless by the application of the lot size requirements or a showing that Tra-Sea had acquired a vested right to convey the lots by virtue of improvements made before the passage of the ordinance. We disagree.

The construction of the terms in a zoning ordinance is a matter of law. *Trottier v. Lebanon*, 117 N.H. 148, 370 A.2d 275 (1977). We find that the master correctly interpreted the language of the grandfather clause to exempt the seventeen lots owned by Tra-Sea from the ordinance's area and frontage requirements. Based upon sufficient evidence, the master found that the lots were lawfully recorded before the enactment of the zoning ordinance in 1974, and therefore were exempt. *Cf. R. A. Vachon & Son, Inc. v. City of Concord*, 112 N.H. 107, 289 A.2d 646 (1972).

Because the lots are protected under the grandfather clause, Tra-Sea may improve or sell them as a matter of right. *Battcock v. Town of Rye*, 116 N.H. 167, 355 A.2d 418 (1976); 2 R. ANDERSON, AMERICAN LAW OF ZONING § 9.62 (2d ed. 1976); *see Beers v. Board of Adjustment*, 75 N.J. Super. 305, 183 A.2d 130 (1962). If the lots are exempt, it is unnecessary for Tra-Sea to establish the existence of a vested right to all the lots or to satisfy standards for a variance by showing that the lots would be rendered valueless by the application of the lot size requirements contained in the Seabrook zoning ordinance. *Graves v. Town of Bloomfield Planning Board*, 97 N.J. Super. 306, 235 A.2d 51 (1967). To interpret the grandfather clause as extending only to those showing a vested right or satisfying standards necessary for a variance would render the grandfather clause meaningless and defeat its purpose of specifically exempting nonconforming lots of record in existing subdivisions. 116 N.H. at 169, 355 A.2d at 420.

The board next argues that the master erred in finding that the language of the Seabrook zoning ordinance impliedly exempted Tra-Sea from any obligation to gain subdivision approval prior to the sale of its lots. Section E.4 of the town's subdivision regulations provides that:

> Whenever any subdivision is proposed and before any contract for the sale of, or offer to sell, rent or lease, such subdivision or any part thereof shall have been negotiated, and before any permit for the erection of a structure within such subdivision shall be granted, the subdivider or his authorized agent shall apply in writing to the board for final approval of such subdivision.

The board contends that since a similar exemption to that found in the zoning ordinance is not contained in the subdivision regulations, the town intended the exemption to apply only to those lots that received prior subdivision approval between the adoption of the regulations in 1972 and the enactment of zoning ordinance in 1974. We disagree.

We find that the master correctly interpreted the grandfather clause of the Seabrook zoning ordinance as impliedly obviating the need for subdivision approval prior to sale of the lots. The master's ruling is consistent with our holding in *Battcock v. Town of Rye*, 116 N.H. 167, 355 A.2d 418 (1976).

■ We agree generally that absent protection afforded by the grandfather clause, subdivision approval would have been required before the unapproved lots could be sold. *See Blevens v. Manchester*, 103 N.H. 284, 170 A.2d 121 (1961). However, when lots are protected under a zoning ordinance grandfather clause, the planning board's subdivision authority does not enable it to prevent the owner from conveying the lots. *See Beers v. Board of Adjustment*, 75 N.J. Super. 305, 183 A.2d 130 (1962); *MacLean v. Planning Board*, 94 N.J. Super. 288, 228 A.2d 85 (1967).

■■ Further, zoning and planning must be viewed as complementary devices used in community planning. *See* Haar, *In Accordance With a Comprehensive Plan*, 68 HARV. L. REV. 1154 (1955). Both are aimed at the orderly development of a community. *See Beck v. Town of Raymond*, 118 N.H. 793, 800–01, 394 A.2d 847, 857 (1978). Though zoning is aimed at controlling the uses of land and existing resources, subdivision regulations are designed to control the division of land "and to assure that such developments thereon are designed to accommodate the needs of the occupants of the subdivision." Baldwin, *Town Planning, Subdivision Regulations and Zoning*, 18 N.H.B.J. 125 (1976), *quoting from* A. RATHKOPF, LAW OF ZONING AND PLANNING ch. 71, § 2 (3d ed. 1956).

RSA 36:21 empowers town planning boards to enact subdivision regulations. *See Patenaude v. Town of Meredith*, 118 N.H. 616, 392 A.2d 582 (1978). The town planning board is an advisory body that recommends zoning amendments and helps prepare a master plan. *Kostreles v. Portsmouth*, 104 N.H. 392, 187 A.2d 789 (1963). The exercise of the special grant of power to enact subdivision controls has been strictly confined to the terms (text, provisions) of the enabling legislation. *See Stoney-Brook Dev. Corp. v. Town of Pembroke*, 118 N.H. 791, 394 A.2d 853 (1978); *Leda Lanes Realty, Inc. v. Nashua*, 112

N.H. 244, 293 A.2d 320 (1972); *Kostreles v. Portsmouth supra.* Though subdivision regulations may prescribe minimum lot areas, these prescriptions must conform to the local zoning ordinance. RSA 36:21; *Isabelle v. Town of Newbury,* 114 N.H. 399, 321 A.2d 570 (1974). The effect of a grandfather clause is to render undersized lots standard even though deficient. *Graves v. Town of Bloomfield Planning Board,* 97 N.J. Super. 306, 235 A.2d 51 (1967).

■ A planning board may impose conditions, even though there has been compliance with minimum lot size provisions contained in a zoning ordinance, when conditions are necessary for "the harmonious development of the municipality and its environs" and for "open spaces of adequate proportion." RSA 36:21; *Patenaude v. Town of Meredith,* 118 N.H. 616, 392 A.2d 582 (1979). Thus, a planning board might condition its approved dedication of a road providing access to individual lots within a proposed subdivision. *See MacLean v. Planning Board,* 94 N.J. Super. 288, 228 A.2d 85 (1967).

■ There was no evidence presented to the master attempting to quantify any expected harm from the sale of the seventeen lots. Rather, the evidence shows that Tra-Sea has made substantial improvements on the seventeen lots consistent with the objective of selling them. The defendant has constructed a road providing access to the lots, which presently support occupied mobile homes. We fail to see how a mere change in ownership would in any significant degree increase municipal burdens, and thereby justify either denial of the right to sell the lots or attachment of conditions to the approval of their sale. *See Keene v. Town of Meredith,* 119 N.H. 379, 402 A.2d 166 (1979).

The board next argues that even if the grandfather clause was intended to exempt the necessity of subdivision approval, Tra-Sea has lost its right to convey the lots individually because it has operated the entire tract as a mobile home park and because it filed a subsequent recording in 1977 depicting the entire tract as composed of two parcels.

■ We agree that an owner of exempt lots may lose his protection by abandoning the property or abolishing individual lot lines. 2 A. RATHKOPF, THE LAW OF ZONING AND PLANNING § 32.03, at 32-10, 32-11 (4th ed. 1979). However, we find that Tra-Sea's use of the property as a mobile home park does not preclude a finding, based upon the evidence, that the lots themselves were treated individually. *See Keene v. Town of Meredith,* 119 N.H. 379, 402 A.2d 166 (1979). The master defined a mobile home park as any parcel of land under single or common ownership laid out or adapted to accommodate two or more

mobile homes. This definition does not exclude separate treatment of the lots. The evidence shows that Tra-Sea has continuously rented separate lots to tenants who own their own mobile homes, the defendant has made improvements on individual lots, and the lots are individually mortgaged. There is evidence that the 1977 plan depicting two parcels was recorded with a view to clearing up deed references and that thereafter Tra-Sea did not combine or in any way extinguish original lot lines.

The board finally contends that Tra-Sea's mobile home park constitutes a nonconforming use that cannot be expanded or changed without a special exception. We disagree.

■■ The master found that the sale of lots does not constitute an expansion or change of a nonconforming use. He correctly indicated that the sale of lots to present owners of mobile homes now situated on the lots does not result in a nonconforming use because the ordinance does not prohibit mobile homes on individual lots. Nor is the sale of lots to individual purchasers intending to construct homes an extension of a nonconforming use because the area is already zoned residential.

■ The board concedes that Tra-Sea would be able to continue indefinitely to lease out mobile home sites. The only practical difference in result between refusing to allow conveyance of lots while allowing them to be leased is one of ownership. The board would restrict the lots to occupancy by tenants residing in mobile homes, rather than permitting lots to be individually owned by occupants. It has been recognized that the mere change from tenant occupancy to owner occupancy is not an extension or alteration of a previous nonconforming use. *Beers v. Board of Adjustment*, 75 N.J. Super. 305, 183 A.2d 130 (1962). Such restrictions must be strictly construed so as not to impair an integral incident of ownership, that of unfettered alienability. *Id.*

*Exceptions overruled.*

KING, J., did not sit; the others concurred.