Hillsborough
No. 83-327
No. 83-471

SKLAR REALTY, INC.

v.

TOWN OF MERRIMACK

AND

AGWAY, INC.

July 31, 1984

*Hamblett & Kerrigan P.A.*, of Nashua (*Joseph M. Kerrigan* on the brief and orally), for the plaintiff.

*Bossie, Kelly & Hodes*, of Manchester (*Robert F. Bossie* on the brief and orally), for the defendant Town of Merrimack.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Robert L. Chiesa* and *William S. Gannon* on the brief, and *Mr. Chiesa* orally), for the defendant Agway, Inc.

SOUTER, J. Each of these consolidated appeals challenges the action of the superior court in adopting the recommendations of its Master (*Walter L. Mitchell, III*, Esq.). In the first case, the plaintiff petitioned the superior court for a writ of certiorari under RSA 36:34 (Supp. 1983) (current version at RSA 677:15 (Supp. 1983)) to review the actions of the Planning Board of Merrimack (board). The board had granted the application of the defendant Agway, Inc. for approval to construct a dry feed plant. The Superior Court (*Flynn, J.*) denied relief on all but one issue, on which it remanded the matter to the board for further consideration. The plaintiff excepted to

the denial of relief and to the order of remand. In the second case, the plaintiff filed a further petition for a writ of certiorari to review the board's action in response to the order of remand. The court adopted the master's recommendation that the petition be denied, and the plaintiff excepted. On the limited grounds described below, we reverse in each case.

The plaintiff owns land in Merrimack abutting the Agway property. The latter is zoned for industrial use, but it also lies within an area designated as wetland. In 1981 and early 1982, Agway carried on discussions with town officials, including the planning board, about its proposal to build a plant for manufacturing dry animal food on the land.

On January 12, 1982, Agway submitted a site plan and applied to the town's zoning board of adjustment (ZBA) for a special exception to the zoning ordinance to allow it to build in a wetland area. After a hearing on January 28, 1982, the ZBA granted the exception subject to four conditions.

Agway then submitted its site plan to the board and sought its approval. The board considered the plan in the exercise of power granted to it by the town to review site plans for non-residential uses of property. RSA 36:19-a (Supp. 1983) (current version at RSA 674:43, :44 (Supp. 1983)). The board gave notice of the application and of a public hearing on it. After the hearing on February 16, 1982, the board granted preliminary approval subject to certain conditions.

Agway continued to revise its plans in response to the board's concerns and later submitted a second site plan that differed from the first. The new plan no longer depicted a so-called "ponded" area as part of the drainage system. It indicated the wet areas of the tract in greater detail and showed one of them where Agway's warehouse was supposed to be built.

On July 13 and July 27, 1982, the board held further public hearings on Agway's proposal. Between those hearings, the board inspected the properties affected and encouraged Agway to continue to modify its plans. Among those who testified on July 27 was an expert engineering witness called by the plaintiff. At the end of that hearing, the board voted to approve the application subject to these eleven conditions:

"1. External operations at the facility to be limited to from seven in the morning to eleven in the evening.

2. Quantitative data be submitted on noise level external to the site in varying increments of 100 to 500 feet represented in decibels or known levels to show that it will be equal to or less than what is there now.

3. Sewer hook up being granted.

4. Design for invert connection to the interceptor be acceptable to the town and the state.

5. Receipt of Air Resources Permit.

6. The bond being posted for the construction of Star Drive.

7. Installation of fire hydrant and sprinkler system in accordance with fire department regulations and consideration be given to adequacy of water pressure.

8. Receipt of Dredge and Fill permit and comments of Conservation Commission.

9. The development of an odor model with concentrations as it shall affect the site and surrounding area for the board and engineering review.

10. Receipt of easement from the B & M Railroad for drainage and sewer crossings.

11. Submittal of insect and rodent control plan."

By a letter to Agway dated August 4, 1982, the board added two more conditions about the height and color of the building proposed.

Between July 27, 1982 and January 17, 1983, Agway submitted information to the board to demonstrate that it had met those conditions that could be satisfied before construction. No one told the plaintiff or its counsel about these submissions, and they knew nothing about them. On January 17, 1983, without notice to the plaintiff, the board found that all conditions had been satisfied and signed the site plan.

In August 1982, the plaintiff brought the first of these statutory petitions for writs of certiorari to review the board's action taken on July 27, 1982. RSA 36:34 (Supp. 1983). The court issued the writ and the master held a hearing on April 4, 1983, in the course of which the plaintiff learned of the information submitted to the board after July 27, 1982. The scope of the hearing was then enlarged to consider such material, and the parties presented testimony on the reasonableness of the board's conclusion that Agway had met the conditions.

On July 7, 1983, the master found for the defendants on all issues except one. He ruled that the board had been wrong to find that Agway had obtained an easement from the Boston & Maine Railroad in fulfillment of condition 10. He found that Agway had provided the board with evidence of nothing more than a revocable

license. He therefore remanded the issue of compliance with condition 10 to the board. The plaintiff claims that the master committed errors, including issuing the order of remand, which we will consider in detail below.

On July 26, 1983, the board reconsidered Agway's compliance with condition 10, in accordance with the order of remand. The record reveals that the manner in which the board conducted its hearing on that issue is subject to dispute, but it is clear that no one testified for the plaintiff at that time. Agway submitted evidence that it had obtained the required easement, and the board so found. The plaintiff then filed the second petition for certiorari to review this action by the board. The plaintiff claimed that the board had violated the plaintiff's right to be heard through his counsel at that hearing. The master ruled against the plaintiff on the ground that it had no right to be heard. The plaintiff's appeal from this decision was consolidated with the appeal from the order in the earlier certiorari proceeding.

Although the plaintiff has made six claims of error in these consolidated appeals, we believe that a consideration of three questions is dispositive: (1) In the exercise of authority derived from RSA 36:19-a (Supp. 1983), may a planning board attach conditions to its approval of a non-residential use of land; (2) does an abutter of such land have a right to be heard on the question whether the applicant has complied with such conditions; (3) does Agway have a valid special exception based on the ZBA's approval of the first plan?

The plaintiff's position on the first issue is that the statute required the board to approve or disapprove the application as submitted and without conditions. The plaintiff relies on the statutory language requiring the board to "approve or disapprove within 90 days after submission." RSA 36:23, I(c) (Supp. 1983) (current version at RSA 676:4, I(c) (Supp. 1983)). The statute makes no express provision for approval of non-residential uses subject to conditions. Agway responds to this position by invoking the terms of the Merrimack Zoning Ordinance, authorizing the board to "modify" as well as approve or disapprove an application, and claims there is authority for this provision in such prior cases of this court as *Town of Seabrook v. Tra-Sea Corporation,* 119 N.H. 937, 410 A.2d 240 (1979).

We do not find either party's authority compelling. The cases cited by Agway involved a planning board's authority to pass on subdivision requests, for which the statute made express provision for a "condition precedent" for approval. RSA 36:22 (current version at RSA 674:36, III (Supp. 1983)). Here we are dealing with authority over non-residential use under RSA 36:19-a (Supp. 1983). On the other hand, the statute quoted by the plaintiff relates to a planning

board's responsibility in subdivision cases as well as non-residential use cases like this one, so that its alternatives of approval or disapproval cannot be read as an absolute bar to conditional approval.

Since no statute expressly forbids a conditional approval, we believe the issue must be considered on a functional analysis of the statute as a whole. *See Bilodeau v. Antal,* 123 N.H. 39, 455 A.2d 1037 (1983). We begin by considering the kinds of conditions that a board might impose. This case illustrates the two basic varieties: conditions subsequent, restricting the use of the property after the building is built (e.g., about hours of operation), and conditions precedent, to be fulfilled before the building may be built (e.g., about obtaining an easement for a drainage pipe).

■ If the board could not impose a condition subsequent, both towns and applicants would lack a tool to adjust the pursuit of private interests to reasonable regulation in the public interest. The plaintiff has not presented any reason to construe the statute to preclude such conditions, and we hold the master did not err in ruling that they were allowable.

If the board could not impose a condition precedent, as it did here, any impediment to approval would require formal disapproval and the wasteful requirement to start all over again. We should avoid any interpretation that would entail such a consequence.

■■ We can readily do this by recognizing that there is no approval within the meaning of RSA 36:23 (Supp. 1983) until any conditions precedent have been found to be fulfilled. Only then is there a final approval that authorizes the applicant to begin his proposed construction. Conditional approval is therefore only an interim step in the process of the board's consideration. Since it can obviously be helpful to boards and applicants, we find no reason to construe the statute to forbid it. Moreover, the recognition that such conditional approval is not final answers the plaintiff's claim that the number of conditions precedent in this case renders approval illusory. For a valid, final approval under the statute, there are no unfulfilled conditions precedent.

The only danger that we see in the practice of giving preliminary approvals subject to conditions precedent would arise from confusing such an approval with the final approval that we described above. It is with such final approval, after the conditions precedent have been met, that boards must be concerned in honoring their obligations to act in a timely fashion as RSA 36:23 (Supp. 1983) requires. Similarly, it is only such final approval that is a "decision of the planning board" from which an aggrieved party may appeal under RSA 36:34 (Supp. 1983). *Totty v. Grantham Planning Board,*

120 N.H. 388, 415 A.2d 687 (1980). We note that under the *Totty* standard, this case was not ripe for appeal until the board had acted, in January 1983. The defendants did not raise the prematurity of the first appeal, however, and the defect was cured by treating it as an appeal from the action finally taken by the board in January 1983.

We conclude our consideration of conditions precedent by holding that the master correctly ruled that their imposition as in this case does not violate RSA 36:23 (Supp. 1983). Indeed, we believe that the concern over the validity of such conditions is merely an indication of the major problem disclosed by this case; that is, how to impose conditions consistently with the rights of an "abutter or a person with a direct interest in the matter." RSA 36:23, I(e) (Supp. 1983).

This brings us to the second issue, whether an abutter like the plaintiff has a right to be heard on the question whether the applicant has in fact satisfied any condition precedent to final approval. Again, the statute does not expressly address the issue. The master in the present case found that there was no such right, but we disagree with the master's conclusion.

Two considerations persuade us that an abutter or directly interested person should be heard on the issue of compliance with conditions. The first consideration is the general statutory right of such a person to testify at a public hearing, before the board acts on any application. RSA 36:23, I(e) (Supp. 1983). In a functional sense, when an applicant claims to have fulfilled a condition attached to an application, that condition has become a part of the application itself. An opportunity to testify on the applicant's fulfillment of such a condition is in reality, then, an opportunity to testify on the factual basis for the application as it must finally be approved or denied. Without that opportunity, the statutory right to be heard would be a limited right indeed.

The second consideration is a general tenet of judicial review, that parties generally may not have judicial review of matters not raised in the forum of trial. *See, e.g., Daboul v. Town of Hampton*, 124 N.H. 307, 471 A.2d 1148 (1983). We require issues to be raised at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance. *See State v. Sands*, 123 N.H. 570, 595, 467 A.2d 202, 217–18 (1983). This is only fair to the parties, the trial forums and the appellate courts.

This principle is at odds, however, with the defendant's position

that an abutter or directly interested person may not be heard before a planning board on the question whether a condition has in fact been fulfilled. For if the abutter cannot be heard before the board, he must raise the issue for the first time in an appellate proceeding in the superior court under RSA 36:34 (Supp. 1983). In this case, the plaintiff presented evidence to the superior court in an effort to reverse the action of the planning board, without ever having had the opportunity to present that evidence to the planning board itself. The plaintiff's statutory right to a hearing before the board was not worth much under these circumstances, and judicial resources were not well used.

The defendants argue that a right to contest the fulfillment of conditions will lead to a multiplicity of hearings, whenever an applicant submits evidence that he has met a condition. There need be no such string of hearings, however. Subject to the time limitations imposed by RSA 36:23 (Supp. 1983), the board may wait until the applicant claims to have fulfilled all conditions, and hold one hearing on all matters of compliance.

Since the plaintiff was not afforded the right to be heard at such a compliance hearing, we must consider what remedy would be appropriate. We are conscious, of course, that the master has already determined that the planning board had an evidentiary basis to find that Agway had fulfilled nine of the ten conditions precedent and has found no cause to review the basis for the tenth such condition. However, the fact that the board could have found as it did does not answer the plaintiff's correct contention that the board should have heard the plaintiff's witnesses before making its findings. We hold that the failure to allow testimony from the plaintiff on this issue was a "serious impairment of opportunity for . . . participation," under RSA 36:23, IV (Supp. 1983), for which reversal is the only effective remedy.

We therefore must reverse the master on this issue in the first appeal, and we thus overturn the basis for his order denying the writ of certiorari in the second appeal. The board's approval must be vacated and the case remanded for a compliance hearing. Since the plaintiff in its brief denies only that Agway has complied with the four conditions numbered 2, 7, 9 and 10, the hearing and the testimony may be limited to those conditions. This conclusion eliminates the issue of whether the order of remand was lawful.

We turn now to the third issue in the case, whether the master erred in finding that the ZBA's grant of a special exception based on a review of the first plan satisfies the requirement of the Merrimack Zoning Ordinance. It is agreed that Agway was obligated to obtain

an exception because it proposed to build in an area designated in the ordinance as wetland. MERRIMACK ZONING ORDINANCE § 2.02.9 and .10. Section 2.02.3, d, obligates the board to "determine that all requirements of this ordinance have been met . . . ."

On the record before us, we hold that the board lacked a sufficient basis to conclude that Agway had met the requirement of the ordinance that it obtain a special exception for the proposal as described in the second plan. We must, therefore, reverse the master's conclusion that the board was correct in finding that the existing exception satisfied the requirement of the zoning ordinance.

In the absence of any record to the contrary, we must assume that the ZBA granted the exception on the basis of the first and only plan submitted to it. As we have noted above, that plan differed from the second plan to which the board later gave conditional approval. The most obvious differences were in the details of the wet areas, of their relation to the proposed building, and of the proposed drainage. Apparently, then, there are relevant differences between what Agway disclosed to the ZBA and what Agway now claims to be the condition of the site in relation to the proposed building.

The defendants argue that these differences do not affect the applicability of the exception to the final plan and proposal, because the second plan would provide for better drainage than the first plan did. This argument misses the mark. The stated purposes of the town's wetland regulation are not limited to concern about drainage. *Id.* § 2.02.8. Moreover, all of those concerns have been entrusted to the ZBA, and it is for the ZBA to say in the first instance whether a change in plans should affect the grant of a special exception. Otherwise an appellate court must be left to guess about the scope of administrative action. Appellate review in those circumstances would be an illusion. On remand to the board, therefore, Agway must resubmit its plan in its revised form to the ZBA, which may then determine whether the special exception should survive the revision.

Before concluding this opinion we must comment briefly on one of the plaintiff's claims that we have not described before. In its brief, the plaintiff asserts that the plan endorsed by the board on January 17, 1983, is in fact a third plan, with a list of revisions dated after July 27, 1982, amounting to significant changes from the second one. We cannot so find on the record before us. The exhibits contain nothing with an endorsement of the board and nothing with a list of revisions dated after July 27, 1982. The only changes apparent on the third plan are *de minimis*.

In summary, we hold that RSA 36:23 (Supp. 1983) did not pre-

clude the board in this case from granting preliminary approval subject to conditions. We hold that the plaintiff had a statutory right to be heard on the question whether Agway had met the conditions. We hold it was error to conclude that the special exception necessarily survived the change in Agway's plans.

Accordingly, we vacate the approval and remand the case to the board. The board will hold a hearing at which the plaintiff may be heard on whether Agway has fulfilled conditions 2, 7, 9 and 10. The board may not enter a further order favorable to Agway unless the ZBA reaffirms its own order after a consideration of the second plan.

*Reversed and remanded.*

All concurred.