NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————

Strafford
No. 2021-0139

GEORGE STERGIOU & a.

v.

CITY OF DOVER

Argued: January 13, 2022
Opinion Issued: July 21, 2022

The Law Office of Scott E. Hogan, of Lyndeborough, for the petitioners, filed no brief.

Joshua M. Wyatt, city attorney, of Dover, on the memorandum of law and orally, for the respondent.

Donahue, Tucker & Ciandella, PLLC, of Portsmouth (Justin L. Pasay and William K. Warren on the brief, and William K. Warren orally), for the intervenors.

HICKS, J. The intervenors, Micheline Elias and The Fakhourys, LLC (collectively, the developer), appeal an order of the Superior Court (Nadeau, C.J.) denying their motion to dismiss a petition filed by the petitioners, George Stergiou, Jen McCarthy, Brendan Sullivan, and Kirankumar Tamminidi (the

abutters), challenging a conditional site plan approval granted to the developer by the planning board (the Board) for the respondent City of Dover (the City). We affirm in part, reverse in part, and remand.

The following facts were recited in the trial court's order. In January 2019, the developer applied to the Board for permission to construct a mixed use development project in Dover. After a public hearing, the Board conditionally approved the site plan on April 23, 2019 (the 2019 Approval). The 2019 Approval and Chapter 153, Article II, Section 153-8 of the City's site review regulations (the Certification Provision) required the developer to provide the Board with copies of the plan in various formats within 90 days. Due to unforeseen circumstances, the developer was unable to meet this deadline.

On July 14, 2020, the developer asked the Board to "re-approve" the 2019 application so that the project could move forward. The Board held a duly-noticed meeting on July 28, 2020, at which it conditionally re-approved the Site Review Plan subject to specified "Conditions to be Met Prior to the Signing of Plans" (the 2020 Approval). As characterized by the trial court, the amended conditions "vary slightly from those set forth in the [2019 Approval]."

On August 27, 2020, the abutters filed a petition, pursuant to RSA 677:15, challenging the 2020 Approval as unlawful and unreasonable. See RSA 677:15 (2016). The developer was allowed to intervene and, thereafter, moved to dismiss the petition on the ground that it was untimely under RSA 677:15, I. While the Board took no position on the motion, the abutters objected. Following a hearing, the trial court denied the motion.

The trial court concluded the conditions imposed in the 2019 Approval "were conditions precedent and thus the decision was not a final decision appealable under RSA 677:15." The court also concluded that because it appeared to be undisputed that those "conditions were not satisfied prior to the [2020 Approval], the [2019 Approval] never became final."

Likewise, the trial court found that the conditions imposed in the 2020 Approval "were conditions precedent and thus the decision was not a final decision appealable under RSA 677:15." The court further ruled:

As there has been no suggestion by the parties or the [developer] that the Board has provided final approval of the plans following the [developer's] satisfaction of the [2020 Approval's] conditions, the court finds it appropriate to stay the present proceedings until the Board has granted the [developer] final approval of the Project.

The developer moved to reconsider the decision on the motion to dismiss, which the trial court denied. The abutters moved to reconsider or clarify the decision to stay the proceedings, contending that the court could not stay a

2

proceeding over which it lacked jurisdiction.  The court granted that motion, agreeing that it "lacks jurisdiction over the present appeal because the conditions imposed by the [2020 Approval]—which was a mere formality to re-approve, and thus supersede, the [2019 Approval]—are conditions precedent." Accordingly, the court dismissed the appeal, without prejudice, for lack of jurisdiction.  The developer now appeals that decision.

"Generally, in ruling upon a motion to dismiss, the trial court must determine whether the allegations contained in the plaintiff's pleadings sufficiently establish a basis upon which relief may be granted."  Atwater v. Town of Plainfield, 160 N.H. 503, 507 (2010) (quotation omitted).  "In making this determination, the court would normally accept all facts pleaded by the plaintiff as true and view those facts in the light most favorable to the plaintiff." Id.  When, however, "the motion to dismiss does not challenge the sufficiency of the plaintiff's legal claim but, instead, raises certain defenses, the trial court must look beyond the plaintiff's unsubstantiated allegations and determine, based on the facts, whether the plaintiff has sufficiently demonstrated his right to claim relief."  Id. (quotation omitted).  "An assertion that a claim should be dismissed because the trial court lacks jurisdiction to hear the claim . . . is one such defense.  We will uphold a trial court's ruling in such a case unless its decision is not supported by the evidence or is legally erroneous."  Id.

The developer moved to dismiss the abutters' petition as untimely.  "New Hampshire law requires strict compliance with statutory time requirements for appeals of planning board decisions to the superior court."  Prop. Portfolio Group v. Town of Derry, 154 N.H. 610, 613 (2006).  "This is because statutory compliance is a necessary prerequisite to establishing jurisdiction in the superior court."  Id.  The applicable statute, RSA 677:15, I, provides, in pertinent part:

> Any persons aggrieved by any decision of the planning board concerning a plat or subdivision may present to the superior court a petition, duly verified, setting forth that such decision is illegal or unreasonable in whole or in part and specifying the grounds upon which the same is claimed to be illegal or unreasonable.  Such petition shall be presented to the court within 30 days after the date upon which the board voted to approve or disapprove the application . . . .

RSA 677:15, I.

The developer argues that the trial court erred in: (1) ruling that the Board approvals at issue were subject to conditions precedent, rather than conditions subsequent; (2) ruling that the Board approvals at issue were not decisions of the Board within the meaning of RSA 677:15, I; and (3) declining to read RSA 676:4, I(i) and RSA 677:15, I, in conjunction to determine whether

3

the conditions imposed were precedent or subsequent. The City counters that "the trial court correctly denied the [developer's] motion to dismiss" because the developer "consented to the procedure by which the Planning Board reapproved the application in July 2020." The City asserts that "before the Planning Board there was agreement that the 2019 approval [had] expired as well as agreement on the re-approval process used."

As a preliminary matter, we agree with the developer that the City's argument "present[s] factual issues the Trial Court never considered" and, therefore, should be disregarded. The trial court made no findings or rulings as to whether the developer "consented" to the 2020 "reapproval" procedure and, by so doing, waived its ability to take the position it subsequently asserted in its motion to dismiss. Accordingly, we decline to address the City's arguments on that issue. State v. Steimel, 155 N.H. 141, 147 (2007) (declining to address issue when "the trial court did not rule on the issue" and "resolving the issue may require additional factual findings").

Turning to the developer's arguments, we note that the first two — that the trial court erred in ruling that the Board approvals at issue were subject to conditions precedent, rather than conditions subsequent, and were not decisions of the Board within the meaning of RSA 677:15, I — both challenge the trial court's rulings on the finality of the approvals for purposes of triggering appellate rights. This follows from our case law holding that: (1) "only [a] final approval . . . is a 'decision of the planning board' from which an aggrieved party may appeal under" RSA 677:15, I, Sklar Realty v. Town of Merrimack, 125 N.H. 321, 327 (1984), superseded, in part, by statute, Laws 1986, 57:1; and (2) "a conditional approval imposing only conditions subsequent constitutes a final decision appealable under RSA 677:15, I." Saunders v. Town of Kingston, 160 N.H. 560, 564 (2010).

We first addressed conditions precedent and conditions subsequent, in the context of planning board approvals, in Sklar Realty. As described in Property Portfolio Group, Sklar Realty "noted that conditions precedent . . . contemplate additional action on the part of the town and, thus, cannot constitute final approval. Conditions subsequent, on the other hand, do not delay approval." Prop. Portfolio Group, 154 N.H. at 615. Accordingly, in Property Portfolio Group, we referred to such conditions as "conditions precedent to approval and conditions subsequent to approval." Id. (emphases added). Implicit in this framework is that it is the planning board's intent, in imposing such conditions, that controls whether they are "precedent" or "subsequent," as our decisions have termed them, or, said alternatively and more accurately, whether the approval the board has granted is intended by it to be final and appealable, or merely "an interim step in the process of the board's consideration." Sklar Realty, 125 N.H. at 327.

4

We acknowledge that planning boards may not always be explicit as to whether their conditional approvals are intended to be final and appealable when issued, or whether they require further action by the board before they are considered final. Indeed, the City in this case asks us to "clarify the decisional law about the 2020 re-approval and whether it was a 'decision of the planning board,'" because land use applicants, planning boards, and municipal staff "need certainty about the commencement and expiration of the 30-day appeal period."

RSA 676:3, I, provides that "[i]f the application is approved with conditions, the board shall include in the written decision a detailed description of all conditions necessary to obtain final approval." RSA 676:3, I (2016). Implicit in this statutory mandate is the requirement that the board explicitly identify whether its approval imposes "conditions necessary to obtain final approval," id., or, in other words, whether it imposes "conditions precedent to approval," Prop. Portfolio Group, 154 N.H. at 615 (emphasis added). Doing so will, by definition, inform all interested parties whether the approval is final and appealable when issued.

We now consider the finality and appealability of the approvals at issue in this case. In its memorandum of law, the City states that "[t]he minutes confirm that the Planning Board regarded the 2020 re-approval as the board's final decision on this site plan, meaning the Planning Board did not continue the matter to a future hearing." Thus, the City considers the 2020 Approval to be a final approval.

Having reviewed the record, we conclude that the conditions imposed in the 2019 Approval are substantially similar to those imposed in the 2020 Approval and that the minutes of the 2019 meeting indicate no different intent regarding finality than the minutes of the 2020 meeting. Accordingly, we conclude that the "Planning Board regarded the . . . [2019 Approval] as the board's final decision on this site plan." This conclusion answers both the developer's first and second questions on appeal: the trial court erred in ruling that the Board approvals at issue were subject to conditions "precedent to approval" and that they were not decisions of the Board within the meaning of RSA 677:15, I, or, in other words, final approvals.

We now consider the effect of the 2019 Approval, given that it was final when issued. Under RSA 677:15, any persons aggrieved by the 2019 Approval, including the abutters, had "30 days after the date upon which the board voted to approve" the developer's site plan in which to file a petition challenging that approval. RSA 677:15, I. The developer represents that the abutters failed to file such a petition within that time, and no party contends otherwise on appeal. Rather, the parties' disagreement relates to the present validity of the 2019 Approval.

5

The developer contends that "the Board's 2019 Approval is still valid" under the City's site review regulations. Specifically, the developer relies on the following provision: "Planning Board approval shall be valid for five years from the date of said approval. If a building permit has not been issued within such time constraints, then said approval shall be considered null and void, except [when extensions are granted] as provided below." Dover, N.H. Site Review Regulations ch. 153, art. II, § 153-9(A).

The City, on the other hand, argues that "[t]he trial court correctly determined [both] that the 2019 approval expired" and that "the 2020 approval is the operative approval." (Bolding omitted.)

The City notes the mandatory language of the Certification Provision: "The applicant shall submit to the Planning Board and Community Development Department an electronic copy and five copies of the final site development plan for the Planning Board Chair's signature within 90 days of receipt of final site plan approval by the Planning Board." Dover, N.H. Site Review Regulations ch. 153, art. II, § 153-8(A) (2020) (emphasis added). The City contends "[t]here is no dispute the mandatory 90-day certification requirement was not met with respect to the 2019 approval" and restates its position that the "2019 approval expired unsigned." (Quotation omitted.)

We agree with the City that, as a rule of construction, "the word 'shall' is a command which requires mandatory enforcement." In re Christopher K., 155 N.H. 219, 229 (2007). Nevertheless, "[t]his does not end the inquiry" where the provision itself "does not provide a remedy" for the failure to comply with its mandate. Id. We need not determine a remedy here. Cf. id. We note only that we find no indication that expiration of the approval is the intended remedy, particularly when the remainder of the Certification Provision allows the 90-day deadline to be extended and such a construction would place the Certification Provision in potential conflict with the provision making the approval valid for five years. In sum, we conclude that the unappealed 2019 Approval remains valid.

We next consider the significance of the 2020 Approval. The developer concedes that the 2020 Approval was a "decision of the planning board" and that the abutters' appeal under RSA 677:15 was timely. (Quotation omitted.) The developer argues, however, that "regardless of the fact that it was fashioned as a 'reapproval,'" such a "process is not contemplated by State or local law." Rather, the developer argues, the 2020 Approval was "effectively," "as a matter of law" an extension of the deadline to meet the Certification Provision.

We decline to hold that the 2020 Approval was an extension of the Certification Provision's deadline. Under the Certification Provision,

6

[t]he Director of Planning and Community Development may grant one ninety-day extension if circumstances arise beyond the control of the applicant. An extension denial by the Director of Planning and Community Development can be appealed to the Planning Board. Any additional extensions can only be granted by the Planning Board.

Dover, N.H., Site Review Regulations ch. 153, Art. II, § 153-8(A). The Certification Provision authorizes the planning board to grant an extension after an initial approval or denial by the Director of Planning and Community Development. Because there is no argument or evidence before us that any such approval or denial occurred, we decline to treat the 2020 Approval as an extension of the Certification Procedure's deadline. Instead, having neither found, nor been provided with, legal authority for the "reapproval" process the Board utilized here, we conclude that the 2020 Approval is a nullity. Cf. Craig v. Planning Bd. of Haverhill, 835 N.E.2d 270, 274 (Mass. App. Ct. 2005) (holding that where the planning board's "inaction, and failure to file the formal notice of extension with the clerk" resulted, pursuant to statute, in the constructive approval of a subdivision application, the "board's subsequent defective 'approval'—along with any 'agreed' or 'approved' modifications—being a 'nullity,' [were] of no effect" (footnote omitted)); Grasso v. Bor. of Spring Lake Hghts., 866 A.2d 988, 991 (N.J. Super. Ct. App. Div. 2004) (noting that "municipal action in the land use control field taken . . . without legal authority is void ab initio and has no legal efficacy" (quotation omitted)). Accordingly, we affirm, on alternative grounds, the trial court's decision that the abutter's RSA 677:15 appeal from the 2020 Approval did not vest it with jurisdiction. See In re R. M., 172 N.H. 694, 699 (2019) ("When a trial court reaches the correct result on mistaken grounds, we may affirm if valid alternative grounds support the decision.").

In sum, we conclude that the 2019 Approval was not timely appealed and remains in force and that the 2020 Approval is void ab initio. Because these conclusions resolve this appeal, we need not address the developer's third appellate argument. We affirm in part, reverse in part, and remand with instructions to dismiss, with prejudice, the abutters' RSA 677:15, I, appeal as untimely.

Affirmed in part; reversed in part; and remanded.

DONOVAN, J., concurred; MACDONALD, C.J., and HANTZ MARCONI, J., concurred specially; BASSETT, J., concurred specially.

MACDONALD, C.J., and HANTZ MARCONI, J., concurring specially. We join in Justice Hicks's thoughtful opinion. As the opinion notes, the court was asked to clarify the law regarding what constitutes an appealable decision of a

7

planning board.  Land use applicants, interested parties, planning boards, and municipal staff all require certainty about when an appeal should be filed.  The majority synthesizes applicable statutes, as well as our precedent, to clarify when the thirty-day period commences.

We write separately to address the developer's arguments regarding the role of a statute not addressed by the majority, RSA 676:4, I(i) (2016), in determining whether the planning board's approvals were final, appealable decisions.  Because the developer prevails on this issue on other grounds, the majority does not reach these arguments.  The developer has properly raised the issue of the applicability of RSA 676:4, I(i), and we believe that discussion of that issue may be of some assistance in further clarifying the law in this area.

As the majority notes, Sklar Realty v. Town of Merrimack, 125 N.H. 321, 327 (1984), first set forth the concepts of "conditions precedent" and "conditions subsequent" in the context of planning board appeals.  The court noted that both kinds of conditions furthered important, but different, objectives.  A condition precedent was intended to avoid the situation where "any impediment to approval would require formal disapproval and the wasteful requirement to start all over again."  Sklar Realty, 125 N.H. at 327.  The court said that there could be no final approval for purposes of appeal until "any conditions precedent have been found to be fulfilled."  Id. ("For a valid, final approval under the statute, there are no unfulfilled conditions precedent.").  Thus, a "condition precedent" was a condition to be fulfilled prior to final approval and a "condition subsequent" was a condition to be fulfilled following final approval.

Shortly after our decision in Sklar Realty, the legislature enacted RSA 676:4, I(i).  That subparagraph provides:

> A planning board may grant conditional approval of a plat or application, which approval shall become final without further public hearing, upon certification to the board by its designee or based upon evidence submitted by the applicant of satisfactory compliance with the conditions imposed.  Such conditions may include a statement notifying the applicant that an approval is conditioned upon the receipt of state or federal permits relating to a project, however, a planning board may not refuse to process an application solely for lack of said permits.  Final approval of a plat or application may occur in the foregoing manner only when the conditions are:
>
> > (1) Minor plan changes whether or not imposed by the board as a result of a public hearing, compliance with which is

administrative and which does not involve discretionary judgment; or

(2) Conditions which are in themselves administrative and which involve no discretionary judgment on the part of the board; or

(3) Conditions with regard to the applicant's possession of permits and approvals granted by other boards or agencies or approvals granted by other boards or agencies, including state and federal permits.

All conditions not specified within this subparagraph as minor, administrative, or relating to issuance of other approvals shall require a hearing, and notice as provided in subparagraph I(d), except that additional notice shall not be required of an adjourned session of a hearing with proper notice if the date, time, and place of the adjourned session were made known at the prior hearing.

By its text and structure, RSA 676:4, I(i) ratifies the use of conditional approvals, but seeks to minimize potential delays before a board's decision becomes final.

In this case, the developer contends that this subparagraph "clearly distinguishes between final approvals subject only to conditions subsequent, i.e., final approvals that are subject only to those types of conditions explicitly contemplated by RSA 676:4, I(i)(1)-(3), and approvals subject to conditions precedent, i.e., approvals subject to conditions that are not minor or administrative and thus require a noticed hearing with the planning board." The developer then argues, inter alia, that the conditions in the planning board's 2019 approval fell within the scope of RSA 676:4, I(i)(1) or (2), and thus were conditions subsequent. Therefore, the developer concludes, the 2019 approval was a final, appealable decision of the planning board.

We disagree with this analysis. In our view, RSA 676:4, I(i) has no bearing upon whether a condition imposed by the planning board is a condition precedent or a condition subsequent. The planning board determines at the time it grants an approval subject to a condition whether the condition it is imposing is a condition precedent or a condition subsequent. If it is a condition subsequent, then the approval is itself the final, appealable order. On the other hand, if it is a condition precedent, then the approval subject to that condition is not the final, appealable order.

The role of RSA 676:4, I(i) is to set forth how a "conditional approval . . . shall become final." Thus, by its plain language, this subparagraph applies solely to approvals subject to conditions precedent, because it is only approvals

9

subject to conditions precedent that later "become final." The subparagraph provides that if the condition imposed is specified in the subparagraph as minor, administrative, or relating to issuance of other approvals, then approval "shall become final" without a further public hearing upon certification to the board by its designee or based upon evidence submitted by the applicant of satisfactory compliance with the conditions imposed. All other conditions require a further public hearing before the approval can become final. But in all cases governed by the subparagraph, some further action must be taken in order for the conditional approval to become final.

Thus, it follows that RSA 676:4, I(i) cannot apply to an approval subject only to a condition subsequent. An approval subject to a condition subsequent does not "become final" — it is final. That is, an approval subject to a condition subsequent is itself final and appealable even though the condition has not been satisfied. Accordingly, RSA 676:4, I(i) has no role to play — the approval is already final, so there is no need to look to RSA 676:4, I(i) to determine how the approval "shall become final."

On this point, we believe it important to emphasize and elaborate on a point made by the majority. A board is required to issue a final written decision "which either approves or disapproves" an application. RSA 676:3, I (2016). The legislature has mandated that if a planning board approves an application with conditions, "the board shall include in the written decision a detailed description of all conditions necessary to obtain final approval." Id. (emphases added). That means that if the planning board intends that a condition it imposes be a condition that must be complied with before the approval can become final (that is, a condition precedent), then the board must say so. In our view, under the plain meaning of RSA 676:3, I, an approval with conditions but without such a designation is a final approval and subject to immediate appeal under RSA 677:15, I (appeals must be filed "30 days after the date upon which the board voted to approve or disapprove the application"). This construction is not only consistent with RSA 676:3, I's plain terms, but also advances the orderly and timely disposition of planning board matters.

Finally, the developer makes one further argument as to why it contends that every approval that imposes a condition that falls within the scope of RSA 676:4, I(i)(1)-(3) must be a final, appealable order. If that is not the case, the developer asserts, then

> it would be nearly impossible for most abutters and other interested parties, except for the applicant or the Planning Board itself, to determine when a conditional approval has become final for purposes of appellate review. Abutters would be forced to monitor the inner workings of their local government to ascertain when a Planning Board decision has become final within the meaning of RSA 677:15, or the Planning

10

Board itself would have to adopt some mechanism to inform abutters when a decision has become final, likely by requiring an additional, duly noticed compliance hearing with the Planning Board in every case.

Again, we disagree. First, as a practical matter, it is likely that in the great majority of cases in which a planning board grants approval with only minor or administrative conditions, the planning board will not designate those conditions as being necessary for final approval. In other words, the order will make clear that any conditions imposed are not conditions precedent. Thus, in those cases, the order itself will indeed be the final, appealable order.

Second, in those, presumably, few cases in which a planning board imposes a condition precedent that, pursuant to RSA 676:4, I(i), can become final without a further public hearing, RSA 676:4, I(i) provides that approval can become final only after "certification to the board" or submission by the applicant of "evidence . . . of satisfactory compliance with the conditions imposed." RSA 676:4, I(i). Thus, while the statute relieves the board of the obligation of holding a further public hearing in those cases, it does not address the manner in which notice of final approval is provided.

We look to the statutory scheme for guidance. RSA 676:3, I, provides that the board "shall issue a final written decision which either approves or disapproves an application . . . ." In addition, RSA 677:15, I, states that any person aggrieved by any decision of the planning board may petition the superior court "within 30 days after the date upon which the board voted to approve or disapprove the application." (Emphasis added.)

Construing these statutes harmoniously, see Krainewood Shores Ass'n v. Town of Moultonborough, 174 N.H. 103, 106 (2021), we conclude that in any case in which a planning board imposes a condition that must be satisfied in order to obtain final approval (that is, a condition precedent), once the condition is satisfied, the planning board must vote to approve the application and must issue a written decision. If the condition precedent is one that can be satisfied under RSA 676:4, I(i) without a further public hearing, then the vote and final written decision will follow after the certification or submission of evidence of satisfactory compliance with the condition. Otherwise, the vote and final written decision will follow after the further public hearing. The appeal period under RSA 677:15, I, will run from the date of the vote to approve.

Accordingly, the developer's concern that abutters and other interested parties will not know when an approval has become final is unfounded. In every case in which the planning board issues an order of approval with a condition precedent, the statutory scheme makes clear that it is the board's obligation, upon determining that the condition has been satisfied, to vote and issue a final, appealable, written decision. Thus, the board will provide the same notice of its final, appealable decision in every case.

11

BASSETT, J., concurring specially. Like Chief Justice MacDonald and Justice Hantz Marconi, I too join in Justice Hicks's opinion. I write separately, however, to explain why I do not join Chief Justice MacDonald and Justice Hantz Marconi's special concurrence addressing the applicability and interpretation of RSA 676:4, I(i) (2016). Although the developer, on appeal, raises the issue addressed in the concurrence, given that the developer prevails on other grounds, it is not necessary to construe RSA 676:4, I(i) in order to decide this case.

Nor has the issue addressed by the Chief Justice and Justice Hantz Marconi been fully briefed by the parties on appeal. The petitioners, who challenged in superior court the site plan approval granted by the planning board, did not file a brief in this court. While the City of Dover did file a memorandum of law, the City stated that "[i]n the end, the City is not advocating for any particular result or outcome." Addressing issues that have not been fully briefed increases the possibility that we will err. See Hodges v. Johnson, 170 N.H. 470, 490 (2017) (Bassett, J., dissenting).

The interpretation offered by the Chief Justice and Justice Hantz Marconi does not establish binding precedent, but rather presents a possible interpretation of the statutes that may be adopted in a future case. I agree with the Chief Justice and Justice Hantz Marconi that this discussion of RSA 676:4, I(i) shines light on the law in this area.

The special concurrence signals to all stakeholders that review of current procedures may be required. In addition, because the concurrence involves interpretation of state statutes, the legislature, now with the benefit of Chief Justice MacDonald and Justice Hantz Marconi's analysis, may wish to revisit or clarify the statutory scheme.